# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                            No. CR 08-0057 JB

JABSIE DWAYNE LEWIS,

    Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on the Defendant's Emergency Motion to Reduce Sentence Pursuant to the First Step Act of 2018 Immediate Release Eligible, filed February 11, 2019 (Doc. 153)("Motion"). The primary issues are: (i) whether, pursuant to section 404 of the Formerly Incarcerated Reenter Society Transformed Safely Transitioning Every Person Act, Pub. L. No. 115-391, 132 Stat. 5194 (2018)("First Step Act"), Defendant Jabsie Dwayne Lewis is eligible for a sentence reduction; and (ii) whether, considering the 18 U.S.C. § 3553(a) factors, the Court should reduce Lewis' term of imprisonment from 188 months to 151 months, resulting in his immediate release. The Court concludes that (i) Lewis is eligible for a sentence reduction, because he meets the First Step Act's eligibility requirements, and (ii) considering the 18 U.S.C. § 3553(a) factors and Lewis' amended United States Sentencing Guidelines ("U.S.S.G.") range pursuant to the First Step Act, the Court will not reduce Lewis' term of imprisonment from 188 months. The Court denies the Motion.

## FACTUAL BACKGROUND

The Court takes the facts from the Presentence Investigation Report, filed April 10, 2019 (Doc. 169)("PSR"). No one has objected to the PSR's recitation of the facts or requested an evidentiary hearing to present more facts; the PSR's facts thus will serve as the Court's findings of fact for purposes of this sentencing.

Lewis was born in Albuquerque, New Mexico, to Gregory Adolph and Jamesetta Lewis, whose relationship ended because of their mutual incarcerations. See PSR ¶ 70, at 32. Throughout Lewis' childhood, his parents struggled with drug and alcohol addiction, "and were in and out of prison," and consequently, Lewis' maternal and paternal grandmothers, both diabetic and mobile only with the assistance of walkers, primarily raised Lewis. PSR ¶ 71, at 32. Lewis has three siblings and five paternal half-siblings, but was not in contact with most of them at the time the PSR was written. See PSR ¶¶ 72-74, at 32-33. Lewis had nine children at the time the PSR was written, and some have lived with him for extended time periods. See PSR ¶¶ 77-84, at 34-36. During the presentence investigation, Lewis' grandmother "expressed her concern and support" for Lewis, "indicated he has always been good to her," and stated that he "has a good heart and is a good father." PSR ¶ 75, at 34. Although Lewis has lived for most of his life in Albuquerque, he has lived for short periods in Dallas, Texas; Houston, Texas; Beaumont, Texas; and Atlanta, Georgia. See PSR ¶ 76, at 34.

Regarding Lewis' physical condition, the PSR reports that he suffered multiple gunshot wounds, but was in good health at the time the PSR was written, although he suffered from seasonal allergies for which he was not prescribed any medication. See PSR ¶¶ 86-87, at 36. The

PSR indicates that Lewis "may have contracted a sexually transmitted disease," and has previously reported a toothache and a pork allergy. See PSR ¶ 87, at 36-37. Lewis "denied any . . . mental health issues" at the time the PSR was written, but reported meeting with a prison psychologist during one of his periods of incarceration, and Lewis stated that his meetings with the psychologist "helped." PSR ¶ 88, at 37. The PSR reports that, on December 19, 2007, Lewis "underwent a mental health evaluation and all results were normal." PSR ¶ 88, at 37.

Regarding Lewis' history with substance abuse, the PSR reports that Lewis first consumed alcohol at age 14 -- at the time the PSR was written, Lewis was 30 years old -- and last consumed alcohol "a few months prior to his arrest for the instant offense." PSR ¶ 89, at 37. Lewis "first smoked marijuana at age 13 and by age 16, he was smoking marijuana on a daily basis," continuing "up until his arrest for the instant offense." PSR ¶ 90, at 37. Lewis "first ingested powder cocaine in 1997," used it "every weekend until 2000," and "denied any recent powder cocaine use." PSR ¶ 91, at 37. In 1998, the Second Judicial District Court in Albuquerque, New Mexico, referred Lewis to Drug Court, but after three months in the program, Lewis was terminated because of noncompliance. See PSR ¶ 95, at 38. Lewis "first used hallucinogenic mushrooms in 1998," explaining that "he was in drug court and was drug tested on a regular basis," so he used hallucinogenic mushrooms because he was never tested for them. PSR ¶ 92, at 37. Lewis first smoked cocaine base[1] in 2001 and continued "up until his arrest for the instant offense," reporting

---

[1]In DePierre v. United States, 564 U.S. 70 (2011), the Supreme Court of the United States held that cocaine base as used in 21 U.S.C. § 841 refers to "not just" crack cocaine, but "cocaine in its chemically basic form," which includes crack as well as other forms of chemically basic cocaine, such as freebase. DePierre v. United States, 564 U.S. at 71. The Supreme Court

that, "if I had the money, I was getting high." PSR ¶ 93, at 37. Lewis tried ecstasy for the first time in 2006, and used it "whenever he was able to get it," because he "was not tested for ecstasy while on state probation/parole." PSR ¶ 94, at 38. Lewis "advised that while on state probation/parole, he was required to attend substance abuse counseling," but the United States Probation Office ("USPO") could not locate records confirming whether he attended. PSR ¶ 95, at 38.

Regarding education and vocational skills, the PSR reports that Lewis dropped out of high school in eleventh grade, at which time he had "earned 9.5 credits and his accumulative [sic] grade point average was 1.131. His class rank was 519 out of 616." PSR ¶ 96, at 38. Lewis completed his General Educational Development ("GED") in 2000, while incarcerated at the Penitentiary of New Mexico in Santa Fe, New Mexico. See PSR ¶ 97, at 38. Lewis reported no vocational skills or specialized training, but stated that, every time he gets out of jail, he works for Elite Auto Detail (formerly Details on Wheels) in Albuquerque. See PSR ¶¶ 97-99, at 38. The PSR also described other short-term or part-time jobs that Lewis has held, although the USPO could not locate employment records to corroborate that information. See PSR ¶¶ 100-02, at 39. Lewis reported no financial assets and only one liability, an unpaid telephone bill. See PSR ¶ 104, at 39.

Lewis had multiple arrests, which did not enter into his criminal history category calculation, for Simultaneous Possession of Drugs and Firearms, Possession of a Controlled

_____

concluded that Congress used the term cocaine base to make clear that 21 U.S.C. § 831(b)(1) "does not apply to offenses involving cocaine hydrochloride (*i.e.*, powder cocaine) or other nonbasic cocaine-related substances." DePierre v. United States, 564 U.S. at 71.

Substance with Intent to Deliver, Possession of Drug Paraphernalia, Disorderly Conduct, Possession of Marijuana (less than 0.01 ounce), Eluding a Police Officer (vehicle), Distribution of a Controlled Substance (First Offense), Possession of a Controlled Substance, and Possession of a Firearm by Felon. See PSR ¶¶ 55-58, at 28-30. The PSR also details Lewis' other criminal conduct, not entered into his criminal history calculation:

| Description of Event | Date Reported |
|---|---|
| Family fighting suspect | January 16, 1998 |
| Vandalism suspect | August 14, 1998 |
| Disturbance suspect | May 22, 1999 |
| Vandalism suspect | September 19, 1999 |
| Aggravated battery suspect | October 31, 1999 |
| Family fighting suspect | November 3, 2005 |
| Aggravated battery suspect | July 15, 2007 |

See PSR ¶¶ 59-65, at 30. The PSR also states that:

> 66. Records from Bernalillo County Metropolitan Court in Albuquerque, New Mexico indicate that from 1997 to 2007, the defendant received 14 citations for various traffic related matters. The majority of the charges included No Drivers License, No Insurance, No Registration, No Seatbelt, Speeding, and Driving While License Suspended. On each occasion, the defendant was either fined and/or sentenced to time served. It is noted that in 11 of the cases, the defendant failed to appear in court and bench warrants were issued for his arrest.

> 67. The defendant reported prior involvement with the Kirk Town Piru gang. He advised he has not been affiliated with the gang since 2000.

PSR ¶¶ 66-67, at 31. The PSR detailed over twenty pages of Lewis' lengthy criminal history. See PSR ¶¶ 35-68, at 11-31. Lewis has several prior misdemeanor convictions, also not included in

his criminal history calculation. See PSR ¶¶ 35-68, at 11-31. Lewis has multiple driving-related misdemeanor convictions -- for No Headlights, No Drivers [sic] License, Driving While License Suspended, and Reckless Driving. See PSR ¶¶ 43, 47, 50, at 19, 23, 25. Lewis has multiple prior misdemeanor convictions related to evading law enforcement and not complying with his terms of supervised release -- specifically, for Resist, Obstruct, or Evade Officer; Failure to Pay Fines (two convictions); Failure to Identify; Failure to Appear (four convictions); and Eluding or Evading a Police Officer (on foot). See PSR ¶¶ 37-38, 40, 43, 46, 48, 50-51, at 13-15, 19, 23-26. Lewis has one drug-related misdemeanor for Possession of Marijuana (less than one ounce). See PSR ¶ 44, at 20. Lewis' other reported misdemeanor convictions are for Battery Against Household Member, Negligent Use of a Deadly Weapon, Criminal Trespass, Criminal Damage to Property ($1000 or less), and Public Nuisance. See PSR ¶¶ 37, 39-40, 42, 44, at 13-15, 18, 20.

Lewis has a prior fourth-degree felony drug conviction for Possession of a Controlled Substance. See PSR ¶ 36, at 11. Lewis' other fourth-degree felony convictions are for Shooting at a Dwelling or Occupied Building (No Injury), Conspiracy to Commit Shooting at a Dwelling or Occupied Building (No Injury), Aggravated Assault (Deadly Weapon), False Imprisonment, and Possession of a Firearm or Destructive Device by a Felon. See PSR ¶¶ 41-42, 45, 49, at 16, 18, 20, 24. Last, Lewis has a third-degree felony conviction for Robbery. See PSR ¶ 45, at 20. The PSR also details Lewis' history with supervised release -- other than the violations for which he was convicted. Some of the events in the table below may correspond to the same violation, which was reported multiple times without resolution:

| Description of Event | Date Reported |
| --- | --- |
| Failure to appear (arraignment hearing) | July 10, 1998 |
| Terminated from Drug Court program because of non-compliance | October 6, 1998 |
| Failure to pay fines | November 2, 1998 |
| Failure to pay fines | November 9, 1998 |
| Failure to appear | December 3, 1998 |
| Failure to pay fines | December 21, 1998 |
| Failure to appear | January 28, 1999 |
| Failure to pay fines | February 3, 1999 |
| Probation revoked | February 10, 1999 |
| Failure to appear | February 11, 1999 |
| Failure to appear | March 3, 1999 |
| Contempt of court | June 24, 1999 |
| Failure to pay fines | September 10, 1999 |
| Contempt of court | October 13, 1999 |
| Failure to appear (sentencing) | October 22, 1999 |
| Failure to appear | October 25, 1999 |
| Failure to appear (sentencing) | November 4, 1999 |
| Failure to appear (sentencing) | November 23, 1999 |
| Failure to appear | May 21, 2001 |
| Unspecified probation violation (no action) | January 16, 2004 |

| | |
|---|---|
| Unspecified probation violation (no action) | January 21, 2004 |
| Probation revoked | February 4, 2004 |
| Unspecified probation violation (no action) | February 26, 2004 |
| Parole revoked | July 21, 2004 |
| Probation revoked | August 18, 2004 |
| Unsatisfactory discharge from probation | September 24, 2005 |
| Failure to pay fines | August 18, 2006 |
| Failure to attend defensive driving school | August 28, 2006 |
| Failure to pay fines (second notification) | September 28, 2006 |
| Failure to attend defensive driving school (second notification) | October 2, 2006 |
| Failure to attend defensive driving school (third notification) | December 27, 2006 |
| Failure to appear | March 1, 2007 |
| Failure to appear | May 24, 2007 |
| Failure to attend defensive driving school (fourth notification) | June 4, 2007 |
| Absconded from supervision | July 13, 2007 |
| Parole and probation revoked | September 19, 2007 |

See PSR ¶¶ 35-68, at 11-31.  The PSR also reports that Lewis had a pending misdemeanor charge for Battery -- Domestic Violence, for which he was arrested on June 20, 2007, and for which he failed to appear on August 17, 2007, and on January 18, 2008.  See PSR ¶ 68, at 31.

The PSR provides the following information regarding the offense conduct:

8. The following information was obtained through investigative materials

prepared by the Albuquerque, New Mexico Police Department (APD) and the Bureau of Alcohol, Tobacco, and Firearms (ATF), as contained in the Assistant United States Attorney's discovery material.

9. On September 6, 2007, Tanya Swanson called the APD emergency dispatch (911) and reported her estranged husband, Jabsie Dwayne Lewis, was in her home and had an outstanding felony warrant for his arrest. Ms. Swanson also stated she and the defendant were in a domestic dispute on September 5, 2007. She advised the defendant was currently asleep in her living room and she was afraid that when she woke up, he would batter her again. Ms. Swanson also stated the defendant was possibly armed.

10. Four APD officers responded to Ms. Swanson's residence and were let inside by Cheryl Polnaszek, who was staying in the home. Ms. Polnaszek led officers into the living room and pointed out two male individuals, later identified as the defendant and Ahmad Williams. It is noted Williams is the defendant's cousin. The officers woke them up and based on the information the defendant could be armed, both the defendant and Williams were handcuffed for officer safety. An immediate search of the area near Williams resulted in no weapons or illegal contraband. However, during a personal search of Williams, a plastic bag containing suspected cocaine base ("crack cocaine") was located in his pocket. The suspected cocaine base later field tested positive and weighed 5.5 gross grams. Williams was arrested and transported to the police station.

11. During an immediate search of the area near the defendant, officers observed the handle of a firearm sticking out from underneath the couch where the defendant had been sleeping. The firearm was within reach of the defendant. The firearm was secured and determined to be a fully loaded (six rounds of ammunition) Hermann Weihrauch .357 Revolver, Serial No. 105646. In addition, on top of the couch, directly underneath where the defendant had been sleeping, officers located a plastic bag containing suspected cocaine, a plastic bag containing suspected cocaine base, and a plastic bag containing suspected marijuana. The suspected substances located on the couch later field tested positive for cocaine, cocaine base, and marijuana. The cocaine weighed 3.5 gross grams; the cocaine base weighed 10.3 gross grams; and the marijuana weighed 3.1 gross grams. During a personal search of the defendant, a plastic bag containing suspected cocaine base was located in his pants pocket. The suspected cocaine base located in his pants pocket later field tested positive and weighed 23.2 gross grams. The defendant was arrested and transported to the police station. At the time of his arrest, it was determined the defendant had an outstanding felony arrest warrant for violating probation/parole out of Second Judicial District Court in Albuquerque, Case No. D-202-CR-200601339.

12.  After both the defendant and Williams were arrested, the officers contacted an APD detective, who responded to the scene.  At the residence, the detective interviewed the defendant's estranged wife, Tanya Swanson.  According to Ms. Swanson, in September 2007, the defendant pulled her from her vehicle by her hair.  He then took the 2007 Mercury Sports Utility Vehicle without her permission.  Ms. Swanson stated she reported the incident to the police and was told to call back if the defendant returned.  She informed the defendant does not live with her, but said later that evening, he and Williams returned to the house, as the keys to the house were on the key chain to her car.  After the defendant and Williams fell asleep, Ms. Swanson called the police.  Ms. Swanson verbally consented to a search of the vehicle, which revealed no illegal contraband.

13.  At the police station, the detective met with the defendant.  The defendant was read his Miranda rights and agreed to answer questions.  He advised the .357 Revolver was not his, but noted he has a .45 handgun.  He also stated his "DNA" (deoxyribonucleic acid) would be found on the firearm, as he "handled" it a "day or two ago."  The defendant further admitted that when he handled the .357 Revolver, he opened it, looked into the cylinder, and saw that it was loaded.  He was unsure if the firearm was still loaded at the time of his arrest.  When questioned about the illegal narcotics found on the couch, the defendant admitted they belonged to him.  He advised the cocaine and marijuana were for "personal use," whereas, he sold the cocaine base to "make some money."

14.  The detective then met with Williams, who also agreed to answer questions.  Williams admitted to being in possession of cocaine base.  He also stated the .357 Revolver, which was located underneath the couch, was his.  Williams stated he placed the firearm underneath the couch along with "crack cocaine."  However, when asked if his DNA would be located on the firearm, Williams stated he had never touched the firearm.  Further, there was no cocaine base located underneath the couch.  In addition, according to the responding officers, as the defendant and Williams were being placed in separate police cars, the defendant was observed "mouthing" to Williams, "tell them the gun is yours."  No court records for Williams regarding this arrest could be located.  Therefore, it appears he was never formally charged.

15.  After the interviews, a record check of the defendant was completed and it was determined the defendant had several felony convictions, including three crimes of violence.  On August 23, 1999, the defendant pled guilty to Count 1, Shooting at a Dwelling or Occupied Building (No Injury)(4th Degree Felony), and Count 2, Conspiracy to Commit Shooting at a Dwelling or Occupied Building (No Injury)(4th Degree Felony), in Second Judicial District Court, Case No. D-202-CR-9803778.  On August 23, 1999, the defendant pled guilty to Aggravated Assault

with a Deadly Weapon (4th Degree Felony) in Second Judicial District Court, Case No. D-202-CR-9902789. On August 23, 1999, the defendant pled guilty to False Imprisonment (4th Degree Felony) and Robbery (3rd Degree Felony) in the Second Judicial District Court, Case No. D-202-CR-9900633.

16. Due to his prior felony convictions, the defendant was prohibited from possessing any firearm. Based on this information, the APD detective contacted the ATF task force agent regarding the defendant's arrest and the agent initiated an investigation into the matter. After reviewing the evidence against the defendant and confirming he was a convicted felon, the case was accepted by the ATF for federal prosecution. On September 17, 2007, the ATF agent traveled to the APD Evidence Section and examined the Hermann Weihrauch .357 Revolver, Serial No. 105646, which appeared to be a functional firearm. An examination of the six rounds of ammunition located in the firearm was also conducted and they were identified as two rounds of Federal .357 magnum ammunition and four rounds of Remington-Peters .357 ammunition. On November 26, 2007, a trace of the firearm and ammunition was completed. It was determined the firearm and ammunition were manufactured outside of New Mexico and therefore were shipped and transported in interstate commerce. The firearm had not been reported stolen.

17. The cocaine and cocaine base were sent to the APD Metropolitan Forensic Science Center Crime Laboratory in Albuquerque, New Mexico for analysis. Due to the small amount of marijuana seized (3.1 gross grams), it was not sent to the laboratory. According to the laboratory report dated June 11, 2008, the cocaine weighed 2.40 net grams and the cocaine base weighed 25.06 net grams.

18. On September 27, 2007, a Criminal Complaint was filed in the United States District Court, District of New Mexico. It is noted the defendant has been in state custody in Case No. D-202-CR-200601339 since September 6, 2007. He was released from state custody on December 18, 2007, and subsequently transferred into federal custody.

19. In summary, on September 6, 2007, the defendant was found in possession of 3.1 grams of marijuana, 2.40 net grams of cocaine, and 25.06 net grams of cocaine base as well as a fully loaded (six rounds of ammunition) Hermann Weihrauch .357 Revolver, Serial No. 105646. Based on the information available, including the case agent's assessment, there is no evidence the defendant was working under the direction of another or directing others. As previously noted, the defendant committed the instant offense subsequent to three prior felony convictions for crimes of violence.

PSR ¶¶ 8-19, at 6-8. In the Plea Agreement, Lewis agreed that the Court may rely on the PSR's

facts to determine his sentence.  See Plea Agreement ¶ 9, at 5, filed November 3, 2009 (Doc. 75).[2]

1.      **The Defendant's Sentencing Memorandum.**

Lewis filed Defendant Jabsie Lewis' Sentencing Memorandum and Objections to the Presentence Report, filed April 5, 2010 (Doc. 90)("Lewis Memo.").  In the Lewis Memo., Lewis requested that the Honorable C. LeRoy Hansen, then-Senior United States District Judge for the United States District Court of the District of New Mexico, impose a sentence of less than 57 months, permit him to serve his time at a minimum-security facility close to Beaumont, Texas, and to participate in drug treatment, namely, the Federal Bureau of Prisons ("BOP")'s 500-hour drug treatment program.  See Lewis Memo. at 1.  Although Lewis acknowledged that his Plea Agreement precluded him from arguing for downward consideration, he presented facts to support his argument that he was not a career offender.  See Lewis Memo. at 3.  Lewis objected that, although he was eighteen years old at the time of the underlying offense, and the offense is a felony controlled-substance offense, thereby satisfying the first two elements of United States Sentencing Guidelines Manual (U.S. Sentencing Comm'n 2009)("U.S.S.G.")'s [3] § 4B1.1(a)'s career offender

_____

[2]Lewis' plea agreement is non-binding.  See Plea Agreement at 1-12; PSR ¶ 5, at 3.  See also Transcript of Plea Hearing, (taken November 3, 2009) at 5:16-20 (Magistrate Judge Garcia, Lewis)(Magistrate Judge Garcia: "Now this is a nonbinding plea.  It is not a plea pursuant to a special rule of criminal procedure known as 11(c)(1)(C).  Do you understand that?"  Lewis: "Yes."), filed June 6, 2010 (Doc. 106)("Plea Tr.").

[3]The Supreme Court held in Peugh v. United States, 569 U.S. 530 (2013):

        District courts must begin their sentencing analysis with the Guidelines in effect at the time of the offense and use them to calculate the sentencing range correctly; and those Guidelines will anchor both the district court's discretion and the appellate review process in all of the ways we have described.  The newer Guidelines, meanwhile, will have the status of one of many reasons a district court

definition,[4] he did not satisfy the definition's third element.  <u>See</u> Lewis Memo. at 3-4.  Lewis

contended that he did not satisfy the third element of the Guidelines' career offender definition,

because he did not have two prior felonies, as U.S.S.G. § 4A1.2(a)(1) and (2) define prior felonies,

of a crime of violence or a controlled substance offense.  <u>See</u> Lewis Memo. at 4.  Lewis argued

the two prior sentences that the USPO uses in its Pre-Sentence Investigation Report -- Form 13

("Form 13") to qualify Lewis as a career offender did not satisfy U.S.S.G. § 4A.12(a)(2)'s

prerequisites, because there is no evidence of an intervening arrest separating the two sentences,

and the sentences were imposed on the same day.  <u>See</u> Lewis Memo. at 5.  Lewis requested,

accordingly, that Judge Hansen reassess his criminal history and assign him an offense level of 21,

minus 3 levels for acceptance of responsibility, resulting in an offense level of 18, with a criminal

history of VI, corresponding to a Guidelines range of 57 to 71 months.  <u>See</u> Lewis Memo. at 5-6.

Lewis requested that Judge Hansen sentence him at the low end of the range for a total

---

might give for *deviating* from the older Guidelines, a status that is simply not
equivalent for *ex post facto* purposes.

569 U.S. at 549.  Because the 2009 Guidelines were in effect at the time of Lewis' crime, the
sentencing court and the USPO used the 2009 Guidelines to calculate Lewis' sentencing range.

[4]U.S.S.G. § 4B1.1(a) defines what constitutes a career offender for the Guidelines'
purposes:

A defendant is a career offender if (1) the defendant was at least eighteen
years old at the time the defendant committed the instant offense of conviction;
(2) the instant offense of conviction is a felony that is either a crime of violence or
a controlled substance offense; and (3) the defendant has at least two prior felony
convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1(a).

imprisonment of 57 months.  See Lewis Memo. at 6.

Lewis next addressed the 18 U.S.C. § 3553(a) factors in turn, beginning with his history and characteristics.  See Lewis Memo. at 7.  Lewis stated that he was born in Albuquerque, New Mexico, to Adolph and Lewis, "whose relationship ended due to their mutual incarcerations." Lewis Memo. at 7.  Lewis contended that throughout his childhood, his parents struggled with drug and alcohol addiction, "and were in and out of prison," and that, consequently, Lewis' maternal and paternal grandmothers, both diabetic and "mobile only with the assistance of walkers," "primarily" raised Lewis.  Lewis Memo. at 7.  Lewis reported that he had three siblings and five paternal half-siblings, but that he was not in contact with most of them.  See Lewis Memo. at 7.  Lewis reported that he had nine children and that some had lived with him for extended time periods.  See Lewis Memo. at 7.

Lewis argued that Judge Hansen should consider the circumstances surrounding the August 23, 1999, plea and disposition agreement into which he entered.  See Lewis Memo. at 8.  Lewis contended that he was nineteen years old when he entered into the plea, and that Mr. Drew Neal represented him.  See Lewis Memo. at 8.  Lewis contended that the Supreme Court of New Mexico later suspended Mr. Neal from the practice of law because of drug and alcohol abuse, and later disbarred Mr. Neal.  See Lewis Memo. at 8 (citing In re Neal, 2001-NMSC-007, 20 P.3d 121; In re Neal, 2003-NMSC-032, 81 P.3d 47).  Lewis contended that Mr. Neal provided ineffective assistance, because Mr. Neal was "rarely present for Mr. Lewis' appearances before various state district court judges," "never met with Mr. Lewis nor presented to him nor explained to him the state's consolidated plea offer," and what Mr. Neal explained "about the potential sentence was

- 14 -

incorrect." Lewis Memo. at 8. Lewis contended that, based on Mr. Neal's ineffective assistance, Lewis intended to apply in state court to have his 1999 plea vacated. See Lewis Memo. at 8. If he ultimately prevailed in state court, Lewis requested that Judge Hansen "consider reopening the sentencing of this case pursuant to 28 U.S.C.S. § 2255." Lewis Memo. at 8. "In the meantime, Lewis respectfully request[ed] that [Judge Hansen] take both his upbringing and his 1999 experience with the legal counsel into consideration when contemplating his sentence." Lewis Memo. at 8.

> Regarding the nature and circumstances of the offense, Lewis noted that he
>
> pled guilty to Possession with Intent to Distribute More Than Five Grams of a Mixture and Substance Containing Cocaine Base, contrary to 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 841(b)(1)(B)(iii), which is a Class B Felony and carries up to ten (10) years of imprisonment, according to the plea agreement.

Lewis Memo. at 9. Lewis contended that he provided the United States with information, but that he "has subsequently been informed" that he will receive no consideration for his cooperation. Lewis Memo. at 9. Lewis requested that Judge Hansen nevertheless take his willingness to cooperate and his cooperation into consideration at sentencing. See Lewis Memo. at 9. Regarding the need for the sentence imposed, Lewis argued that his is a situation that the Sentencing Commission did not consider in formulating the Guidelines, because the Career Offender Table in U.S.S.G. § 4B1.1(c)(3) counseled that, without a reduction, he faced a sentencing range between 360 months and life, and with a 3-level reduction, he faced a range between 262 and 327 months. See Lewis Memo. at 10. Lewis argued that, instead, Judge Hansen should sentence him at 57 months, "less than one third of the career offender calculation." Lewis Memo. at 10. Last, Lewis requested that Judge Hansen consider the crack/cocaine sentencing disparity and, based on

Kimbrough v. United States, 552 U.S. 85 (2007)("Kimbrough"),[5] correct that disparity by exercising its discretion to assign him a lower sentence than the Guidelines suggested. See Lewis Memo. at 12.

## 2. **The Addendum.**

The USPO prepared an Addendum to the Presentence Report (dated April 7, 2010), filed April 10, 2019 (Doc. 170)("Addendum"). In the Addendum, the USPO responded to the objection Lewis raised in the Lewis Memo. regarding his qualification as a career offender. See Addendum at 1-2. The USPO responded:

> The United States Probation Office maintains its position the defendant qualifies as a Career Offender, pursuant to U.S.S.G. § 4B1.1, as the defendant was at least 18 years old at the time of the instant offense, the instant offense is a qualifying felony offense, and he has at least two prior qualifying felony convictions as detailed below.
>
> (1) On August 23, 1999, the defendant pled guilty to Aggravated Assault with a Deadly Weapon (4th Degree Felony) in the Second Judicial District Court in Albuquerque, New Mexico, Case No. D-202-CR-9902789. Court records indicate the defendant committed the offense on December 12, 1998 and records from the National Crime Information Center indicate he was arrested for the offense on that same date at the New Mexico Corrections Department, Probation/Parole Division, Region Two Office in Albuquerque.
>
> (2) On August 23, 1999, the defendant pled guilty to Count 2, False Imprisonment (4th Degree Felony), and Count 3, Robbery (3rd Degree Felony) in the Second Judicial District Court, Case No. D-202-CR-9900633. Court records indicate the defendant committed the offense on December 30, 1998 and Albuquerque Police Department records indicate he was arrested for the offense on February 23, 1999.
>
> Further, it is noted the defendant has a third qualifying felony crime of

---

[5]Kimbrough states that a sentencing court may vary from the Guidelines for no other reason than having policy disagreements with the Guidelines -- these disagreements are known as Kimbrough disagreements. See Kimbrough, 552 U.S. at 101.

violence conviction.  On August 23, 1999, the defendant pled guilty to Shooting at a Dwelling or Occupied Building (No Injury)(4th Degree Felony) and Conspiracy to Commit Shooting at a Dwelling or Occupied Building (No Injury)(4th Degree Felony) in Second Judicial District Court, Case No. D-202-CR-9803778.  Court records indicate the defendant committed the offense on September 17, 1998 and Albuquerque Police Department records indicate he was arrested for the offense on October 13, 1998.

Based on the above listed information, it appears the defendant qualifies as a career offender and therefore, based on a total offense level of 31 and a criminal history category of VI, the guideline imprisonment range is 188 to 235 months.

Addendum at 1-2.

### 3.  The United States' Sentencing Memorandum.

The United States asserted that Lewis filed the Lewis Memo. despite his plea agreement, which precluded him from seeking a downward variance.  See United States' Sealed Sentencing Memorandum and Response to Defendant's Objections to the Presentence Report, filed April 9, 2010 (Doc. 91)("United States Memo.").  The United States recommended, pursuant to the plea agreement and considering Lewis' status as a career offender, that the court impose a sentence at the low end of Lewis' applicable Guidelines range of 188 months imprisonment, followed by three years of supervised release and a $100.00 special penalty assessment.  See United States Memo. at 4.

The United States next argued that Lewis is a career offender, because of his "multiple prior convictions of crimes of violence or controlled substances."  United States Memo. at 4.  The United States averred that the USPO confirmed Lewis' criminal history in the process of preparing the Form 13 and that, at the time of the offense for which Lewis was sentenced, he had the following prior convictions:

1. Shooting at a Dwelling or Occupied Building (No Injury), a 4th Degree Felony, in the Second Judicial District Court, Cause No. D-202-CR-9802246;

2. Aggravated Assault With a Deadly Weapon, a 4th Degree Felony, in the Second Judicial District Court, Case No. D-202-CR-9902789;

3. False Imprisonment, a 4th Degree Felony, and Robbery, a 3rd Degree Felony, in the Second Judicial District Court, Case No. D-202-CR-9902789; and

4. Possession of a Controlled Substance, a 4th Degree Felony, in the Second Judicial District Court, Case No. D-202-CR-9602246.

United States Memo. at 5. The United States averred that Lewis' attorney confirmed his criminal history and, pursuant to the plea agreement, Lewis admitted his career offender status, acknowledging his prior convictions for Aggravated Assault With a Deadly Weapon, False Imprisonment, and Possession of a Controlled Substance. See United States Memo. at 5. The United States contended that none of the prior offenses in the list above were related, because intervening arrests separated them. See United States Memo. at 6.

> According to the presentence report and the addendum to the presentence report, the Defendant was arrested for Possession of Controlled Substances on October 20, 1997, Shooting at A Dwelling on October 13, 1998, Aggravated Assault (Deadly Weapon) on December 12, 1998 and False Imprisonment on February 23, 1999. The dates of each arrests [sic] suggests these prior offenses are not related because the offense was separated by an intervening arrest.

United States Memo. at 5-6 (citing U.S.S.G. § 4A1.2(a)(2)). The United States averred that the Aggravated Assault (Deadly Weapon) and Shooting at a Dwelling offenses qualified as crimes of

violence[6] under the residual clause,[7] the Aggravated Assault (Deadly Weapon) qualified as a crime

---

[6]To determine whether an offense is a crime of violence, the Court employs a "categorical approach."  United States v. Serafin, 562 F.3d 1105, 1107 (10th Cir. 2009)(quoting United States v. Munro, 394 F.3d 865, 870 (2005)).

> Under the categorical approach, we look "only to the fact of conviction and the statutory definition of the prior offense, and do not generally consider the particular facts disclosed by the record of conviction.  That is, we consider whether the elements of the offense are of the type that would justify its inclusion . . . [as a crime of violence], without inquiring into the specific conduct of this particular offender."

United States v. Serafin, 562 F.3d at 1107-08 (alteration in original)(quoting United States v. West, 550 F.3d 952, 957 (10th Cir. 2008)).  "The modified categorical approach applies when the statute is 'divisible'; that is, when it 'lists multiple, alternative elements, and so effectively creates several different crimes.'"  United States v. Taylor, 843 F.3d 1215, 1220 (10th Cir. 2016)(quoting United States v. Madrid, 805 F.3d 1204, 1207 (10th Cir. 2015)).  When applying the modified categorical approach, a court may "consult a limited class of documents, such as indictments and jury instructions, to determine which alternative [elements] formed the basis of the defendant's . . . conviction."  Descamps v. United States, 570 U.S. 254, 256 (2013)(alterations added).  A court then "compare[s] those elements to the crime of violence categories, still focus[ing] only on the elements, rather than the facts, of a crime to determine whether it is categorically a crime of violence under all circumstances."  United States v. Mitchell, 653 F. App'x 639, 643 (10th Cir. 2016)(unpublished)(first alteration added)(citations and internal quotation marks omitted).

> The Supreme Court said that the proper use of the modified categorical approach "preserves the categorical approach's basic method: comparing those elements with the generic offense's.  All the modified approach adds is a mechanism for making that comparison when a statute lists multiple, alternative elements, and so effectively creates several different crimes."

United States v. Miera, No. CR 12-3111 JB, 2013 WL 6504297, at *6 (D.N.M. Nov. 22, 2013)(Browning, J.)(quoting Descamps v. United States, 570 U.S. at 263).

[7]In Johnson v. United States, 135 S.Ct. 2551 (2015)("Johnson"), the Supreme Court considered whether § 924(e)(2)(B)(ii), the Armed Career Criminal Act's, 18 U.S.C. § 924(e) ("ACCA"), residual clause, 18 U.S.C. § 924(e)(2)(B)(ii), violates the Due Process Clause of the Constitution of the United States of America.  See Johnson, 135 S. Ct. at 2557.  In general, the maximum term of imprisonment for a defendant convicted of being a felon in possession of a firearm is ten years.  See 18 U.S.C. § 924(a)(2).  "But if the violator has three or more earlier

convictions for a 'serious drug offense' or a 'violent felony,' the Armed Career Criminal Act increases his prison term to a minimum of 15 years and a maximum of life." Johnson, 135 S. Ct. at 2555 (quoting 18 U.S.C. § 924(e)(1)). The ACCA defines a "violent felony" as

> any crime punishable by imprisonment for a term exceeding one year . . . that --

>> (i) has an element the use, attempted use, or threatened use of physical force against the person of another, or

>> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another;

18 U.S.C. § 924(e)(2)(B). The Supreme Court held that § 924(e)(2)(B)(ii) "denies fair notice to defendants and invites arbitrary enforcement by judges." Johnson, 135 S. Ct. at 2557. Therefore, "imposing an increased sentence under the residual clause of the Armed Career Criminal Act violates the Constitution's guarantee of due process." Johnson, 135 S. Ct. at 2563. The Supreme Court clarified that its "decision does not call into question application of the Act to the four enumerated offenses [burglary, arson, extortion, or the use of explosives], or the remainder of the Act's definition of a violent felony." Johnson, 135 S. Ct. at 2563.

    In United States v. Madrid, 805 F.3d at 1210, the Tenth Circuit held that the Supreme Court's decision in Johnson applied to the residual clause definition of a "crime of violence" in the "career offender" provision of the United States Sentencing Guidelines, § 4B1.1. 2018 U.S. Sentencing Guidelines Manual § 4B1.2(a)(2) (U.S. Sentencing Comm'n 2018)("2018 U.S.S.G.")(defining a "crime of violence," in relevant part, as a crime that "otherwise involves conduct that presents a serious potential risk of physical injury to another."). The Tenth Circuit stated that "[t]he concerns about judicial inconsistency that motivated the Court in Johnson, lead us to conclude that the residual clause of the Guidelines is also unconstitutionally vague. If one iteration of the clause is unconstitutionally vague, so too is the other." United States v. Madrid, 805 F.3d at 1210.

    Following Johnson and United States v. Madrid, the Court deemed § 924(c)(3)(B) sufficiently different from § 924(e)(2)(B)(ii)'s and 2018 U.S.S.G. § 4B1.2(a)(2)'s language to treat § 924(c)(3)(B) as constitutional. See United States v. Francia, No. CR 12-3025 JB, 2017 WL 2266852, at *3-5 (D.N.M. Feb. 28, 2017)(Browning, J.). The Court stated that "Johnson's reasoning should not extend to § 924(c)(3)(B)'s residual clause." United States v. Francia, 2017 WL 2266852, at *3 (quoting United States v. Taylor, 814 F.3d 340, 376-77 (6th Cir. 2016)).

    Nevertheless, since the Court's decision, the Supreme Court, in Sessions v. Dimaya, 138 S. Ct. 1204 (2018), concluded that Johnson controls whether the language in 18 U.S.C. § 16(b) -- "substantial risk that physical force against the person or property of another may be used in the course of committing the offense" -- was unconstitutionally vague and, accordingly, declared unconstitutional 18 U.S.C. § 16(b). See Sessions v. Dimaya, 138 S. Ct. 1204 at 1213-16. Section

of violence also because it had as an element the use of force, and the False Imprisonment

conviction qualified as a crime of violence under the residual clause.[8]  See United States Memo.

---

16 provides the federal criminal code's definition of crime of violence, which the Immigration and Nationality Act, 8 U.S.C. §§ 1186b, 1252b, 1254a, 1288, 1304, 1324c; 29 U.S.C. § 3293, incorporates, see Sessions v. Dimaya, 138 S. Ct. at 1211, and states:

> The term "crime of violence" means --
>
> > **(a)** an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
> >
> > **(b)** any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 16.  In determining § 16(b)'s constitutionality in an immigration appeal, the Supreme Court reasoned that § 16(b) raises the same problems as § 924(e)(2)(B)(ii): (i) "§ 16(b) also calls for a court to identify a crime's 'ordinary case' in order to measure the crime's risk," Sessions v. Dimaya, 138 S. Ct. at 1215; and (ii) "uncertainty about the level of risk that makes a crime 'violent.'  In ACCA, that threshold was 'serious potential risk'; in § 16(b), it is 'substantial risk.'" Sessions v. Dimaya, 138 S. Ct. at 1215 (quoting 18 U.S.C. § 16(b), § 924(e)(2)(B)(ii)).

In Sessions v. Dimaya's aftermath, § 16(b)'s similarities to § 924(c)(3)(B) persuaded the Tenth Circuit to deem § 924(c)(3)(B) likewise unconstitutionally vague.  See United States v. Salas, 889 F.3d 681, 686 (10th Cir. 2018).  The Tenth Circuit noted that it had previously "held that 'cases interpreting [§ 16(b)] inform our analysis' when interpreting § 924(c)(3)(B)," United States v. Salas, 889 F.3d at 685 (alteration in original)(quoting United States v. Serafin, 562 F.3d at 1108 & n.4), and concluded that "§ 924(c)(3)(B) possesses the same features as the ACCA's residual clause and § 16(b) that combine to produce 'more unpredictability and arbitrariness than the Due Process Clause tolerates,' and Dimaya's reasoning for invalidating § 16(b) applies equally to § 924(c)(3)(B)," United States v. Salas, 889 F.3d at 686 (quoting Sessions v. Dimaya, 138 S. Ct. at 1215 at 1223).  The Tenth Circuit rejected the United States' argument that, because § 924(c)(3)(B) applies only to crimes involving firearms, § 924(c)(3)(B) differs from § 16(b), because "this firearm requirement simply means that the statute will apply in fewer instances, not that it is any less vague."  United States v. Salas, 889 F.3d at 685.

[8]Following the Supreme Court's ruling in Johnson, Lewis filed an Emergency Motion to Correct Sentence Under 28 U.S.C. § 2255, filed June 26, 2016 (Doc. 135).  The Honorable Karen B. Molzen, United States Magistrate Judge for the District of New Mexico, ordered the parties to meet and confer in light of Beckles v. United States, 580 U.S. ___ (2017), No. 15-8544, slip op

at 6 n.2 (citing United States v. Zamora, 222 F.3d 756, 763-65 (10th Cir. 2000)).  The United States acknowledged that, although the Second Judicial District Court sentenced Lewis for all four prior convictions on the same date, August 23, 1999, "each conviction at issue retained a separate district court case number which suggests unrelated sentences."  United States Memo. at 6.

The United States next addressed the 18 U.S.C. § 3553(a) factors in turn, beginning with the need to reflect the offense's seriousness, promote respect for the law, and provide just punishment for the offense.  See United States Memo. at 7.  The United States averred that Lewis possessed multiple cocaine bundles, "well beyond 5 grams," which he intended to sell to make money, that Lewis had a long history of drug use and several prior violent crime offenses, that Lewis had a gun "available to use for protection in committing this crime," and that the federal offense, Possession With Intent to Distribute More than 5 Grams of A Mixture and Substance Containing Cocaine, was a serious offense deserving of harsh consequences.  See United States

---

(March 6, 2017).  Magistrate Judge Molzen directed the parties to confer on the question of whether the Supreme Court's ruling in Beckles v. United States disposed of all issues raised in Lewis' Emergency Motion to Correct Sentence Under 28 U.S.C. § 2255.  The parties met and conferred and, subsequently, Judge Hansen entered an Order of Dismissal of Motion to Correct Sentence Pursuant to 28 U.S.C. § 2255, filed March 30, 2017 (Doc. 151)("Order of Dismissal"). In his Order of Dismissal, Judge Hansen concluded that although under the reasoning in Johnson, U.S.S.G. § 4B1.2's residual clause is unconstitutionally vague, in Beckles v. United States, the Supreme Court held that the Sentencing Guidelines are not subject to a void-for-vagueness challenge.  See Order of Dismissal at 1 (citing Beckles v. United States, 580 U.S. ___, No. 15-8544, slip op at 5).  Judge Hansen stated that the parties "filed a Statement that the ruling in *Beckles* is dispositive of all issues raised in Movant's § 2255 Motion and that his § 2255 proceeding should be dismissed without prejudice.  Lewis is not entitled to relief and his § 2255 Motion will be dismissed under Rule 4."  Order of Dismissal at 1-2.  Lewis' sentence, determined in part by his career offender designation pursuant to the residual clause, therefore remained unchanged after Johnson.

Memo. at 7-8.  The United States contended that the offense demanded a serious sentence to "attempt to deter this Defendant."  United States Memo. at 8.

The United States next addressed Lewis' history and characteristics, the offense's nature, and the need to protect the public.  <u>See</u> United States Memo. at 8.  The United States argued that, "[d]espite repeated and ongoing efforts to deter Defendant's substance abuse problems and criminal actions, such deterrence has proved unsuccessful."  United States Memo. at 8.  The United States contended that Lewis continued to commit "egregious" criminal acts and that, accordingly, "the United States submits Defendant is a danger."  United States Memo. at 8.

Regarding Lewis' stated desire to receive drug addiction treatment, the United States argues that the Bureau of Prisons is "equipped to provide appropriate services" and that supervised release is an inadequate solution, where Lewis has not previously complied with probationary conditions designed to address his drug problem.  United States Memo. at 9.  The United States argued that the Guidelines range applicable to Lewis was appropriate, reasonable, and justified. <u>See</u> United States Memo. at 10.  The United States also averred that, with a sentence of 188 months of imprisonment, Lewis would receive "the same length of sentence as others, with a similar criminal history, who commit Possession With Intent to Distribute More than 5 Grams of A Mixture and Substance Containing Cocaine."  United States Memo. at 11.  The United States next asked that Judge Hansen "order the Defendant to reimburse for previous appointed attorneys' services in this case," because, although Lewis "claimed he lacked the financial resources to pay for a lawyer," he now had, "after two years of incarceration, . . . located the appropriate funds to hire a private lawyer to assist in his defense."  United States Memo. at 11-12.

4.    **The Sentencing Hearing**.

Judge Hansen sentenced Lewis.  See Transcript of Sentence Hearing (taken April 13, 2010), filed August 16, 2010 (Doc. 110)("Sentencing Tr.").  Judge Hansen began by asking whether Lewis wished to address the objections he raised in the Lewis Memo.  See Sentencing Tr. at 2:10-11 (Court).  Lewis objected to the United States' assertion that his prior convictions are separate offenses because they have different case numbers and stated that the records associated with his prior offenses are so old that the reports are destroyed and that "it's impossible to determine whether or not there is [sic] intervening arrests in this case."  Sentencing Tr. at 2:24-3:11 (Kennedy).  Lewis indicated that the USPO submitted something to Judge Hansen "that said [Albuquerque Police Department ("APD")] records indicate that he was arrested on each of these cases," but that a report no longer exists, and there were no intervening arrests.  Sentencing Tr. at 3:12-17 (Kennedy).  The United States responded that it relied upon the addendum to the Form 13, the separate arrest dates, and the separate case numbers, to show that Lewis' prior convictions constitute separate offenses "so as to qualify for a career offender" designation.  Sentencing Tr. at 3:20-25 (Rees).  The United States averred, furthermore, that Lewis admitted in his plea agreement that he is a career offender.  See Sentencing Tr. 4:4-6 (Rees).

Judge Hansen examined the addendum to the Form 13 and concluded that, based on the separate offense dates and case numbers for Lewis' prior convictions, he qualifies as a career offender.  See Sentencing Tr. at 4:9-25 (Court).  Lewis responded that, although the addendum to the Form 13 includes dates, Lewis could find no information to verify those dates independently before receiving the addendum to the Form 13.  See Sentencing Tr. at 5:2-4 (Rees).  Judge Hansen

overruled Lewis' objection regarding his career offender designation.  See Sentencing Tr. at 5:8-9 (Court).

Next, Lewis drew Judge Hansen's attention to Mr. Neal's ineffective assistance at the time of Lewis' plea agreement for the prior convictions, and that, based on the ineffective assistance which Lewis received, he has requested, in state court, that his sentences for the prior crimes be reopened and reviewed.  See Sentencing Tr. at 5:15-6 (Kennedy); id. at 6:10-12 (Court, Kennedy). Lewis requested that Judge Hansen, pursuant to 28 U.S.C. § 2255, reopen Lewis' sentencing in state court.  See Sentencing Tr. at 6:16-19 (Kennedy).  The United States responded that "the time to attack the state convictions has already run, and that he cannot collaterally attack those prior state convictions in federal court."  Sentencing Tr. at 7:4-7 (Rees).  Judge Hansen clarified that Lewis has already served his state sentences.  See Sentencing Tr. at 7:8-9 (Court).  Lewis acknowledged that he served his state sentences but contended that he could still appeal in state court, and Judge Hansen responded that he was unsure that Lewis could appeal in state court.  See Sentencing Tr. at 7:10-16 (Kennedy, Court).  Lewis proposed that Judge Hansen continue the sentencing until it could consider the issue of reopening the prior state court sentencing, and Judge Hansen declined, noting that Lewis has already been through four attorneys, and that the case opened three years prior.  See Sentencing Tr. at 7:13-25 (Kennedy, Court).  Judge Hansen stated that he did not see a means by which he could grant state court sentencing relief, and Lewis responded that, at the end of the hearing, he wished to discuss with Judge Hansen his ability to appeal Judge Hansen's rulings.  See Sentencing Tr. at 9:1-7 (Court, Kennedy).

Judge Hansen asked whether there is a plea agreement, and Lewis stated that there is an

agreement, and confirmed that, if he withdrew from the plea, he would be exposed to a greater potential sentence.  See Sentencing Tr. at 9:8-15 (Court, Kennedy).  The United States then asked Judge Hansen to sentence Lewis immediately and stated that the plea agreement "encompasses not arguing for a downward departure or variance," "waiving all appeal rights," and is "frankly . . . favorable" to Lewis.  Sentencing Tr. at 9:17-25 (Rees).  Lewis indicated to Judge Hansen that he was inclined to withdraw his plea if Judge Hansen would not allow him to appeal, and Judge Hansen responded that he would not delay the disposition of the case, given its long history, and that he accepted the plea agreement and Lewis' guilty plea.  See Sentencing Tr. at 10:4-21 (Kennedy, Court).  Judge Hansen then asked whether the parties wished to address sentencing issues.  See Sentencing Tr. at 10:22 (Court).  Lewis stated that the United States did not honor its cooperation agreement with Lewis, and Judge Hansen dictated that, according to the briefing and Lewis' prior counsel's affidavit, Judge Hansen did not believe he saw anything "which would change the result in this case."  Sentencing Tr. at 11:5-14 (Kennedy, Court).

Lewis next argued that, pursuant to 18 U.S.C. § 3553(b), Judge Hansen could depart from the advisory Guidelines range, because of "issues not adequately taken into consideration by the Sentencing Commission."  Sentencing Tr. at 11:15-18 (Kennedy).  First, Lewis argued that his Guidelines sentencing range was 92 to 115 months, but that his career offender designation elevated that range to 188 to 234 months, more than doubling his sentence, and warranting a departure.  See Sentencing Tr. at 12:4-10 (Kennedy).  Lewis also argued that his offense level of 26, before the career offender designation is applied, is disproportionately high, because of the unwarranted disparity between sentencing for cocaine base and cocaine.  See Sentencing Tr. at

12:12-14 (Kennedy).  Judge Hansen stated that Lewis was sentenced under the career offender provision, not the crack cocaine provision, so the <u>Kimbrough</u> crack/cocaine disparity argument is inapposite.  <u>See</u> Sentencing Tr. at 13:1-3 (Court).  Lewis argued that Judge Hansen should nevertheless consider the disparity, because Lewis' offense involved so little cocaine base that his case would not be a federal one but for a firearm that was incorrectly associated with him.  <u>See</u> Sentencing Tr. at 13:4-9 (Kennedy).  Judge Hansen remarked that state courts do not give sentences of the same length for the same crime as federal courts do.  <u>See</u> Sentencing Tr. at 13:17-20 (Court).  Judge Hansen remarked that, although he is aware federal courts may depart from the Guidelines for many reasons, he has not "seen anything out of the ordinary in this case which leads [him] to that conclusion."  Sentencing Tr. at 14:5-7 (Court).

Judge Hansen noted that he reviewed the Form 13's factual findings and considered the Guidelines applications, as well as the 18 U.S.C. § 3553(a) factors, including the USPO's finding that Lewis is a career offender.  <u>See</u> Sentencing Tr. at 19:8-12 (Court).  Judge Hansen stated that Lewis' offense level is 31, his criminal history category is VI, and his Guidelines imprisonment range is 188 to 235 months.  <u>See</u> Sentencing Tr. at 19:13-14 (Court).  Judge Hansen noted that Lewis, "a convicted felon, possessed 3.1 grams of marijuana, 2.4 net grams of cocaine, 25.06 net grams of cocaine base, as well as a fully loaded revolver."  Sentencing Tr. at 19:15-18 (Court). Judge Hansen sentenced Lewis to a term of 188 months incarceration, recommended that he participate in the BOP's 500-hour drug and alcohol treatment program, and that he participate in additional educational or vocational programs while incarcerated, and sentenced Lewis to eight years of supervised release following his term of incarceration.  <u>See</u> Sentencing Tr. at 19:20-20:3

(Court). Judge Hansen imposed a series of conditions, stating as follows:

The defendant must comply with the standard conditions of supervised release and the following mandatory conditions: The defendant will submit to DNA collection in compliance with statutory requirements while incarcerated in the Bureau of Prisons or at the direction of the United States Probation Office.

The defendant shall not possess, have under his control, or have access to, any firearm, ammunition, explosive device, or other dangerous weapons as defined by federal, state, or local law.

The following special conditions will also be imposed:

The defendant must participate in and successfully complete a substance abuse treatment program which may include drug testing, outpatient counseling, or residential placement. The defendant is prohibited from obstructing or attempting to obstruct or tamper in any fashion with the collection, efficiency and accuracy of any substance testing device or procedure. The defendant may be required to pay a portion of the cost of treatment and/or drug testing as determined by the probation office.

The defendant must refrain from the use and possession of alcohol and other forms of intoxicants. He must not frequent places where alcohol is the primary item for sale.

The defendant must participate in an educational or vocational program as approved by the probation office.

The defendant must submit to a search of his person, property, or automobile under his control to be conducted in a reasonable manner and at a reasonable time for the purpose of detecting firearms, narcotics, or other contraband at the direction of the probation officer. He must inform any residents that the premises musts be subject to a search.

The defendant must participate in and successfully complete a mental health treatment program which may include outpatient counseling, residential placement, or prescribed medication as approved by the probation officer. The defendant may be required to pay a portion of the cost of this treatment as determined by the probation office.

The defendant shall reside at and complete a program at a community corrections center for a period of six months as approved by the probation office.

Sentencing Tr. at 20:4-21:18 (Court).

Judge Hansen did not impose a fine, because of Lewis' lack of financial resources. <u>See</u> Sentencing Tr. at 21:19-20 (Court). Judge Hansen ordered Lewis to pay a special assessment of $100.00, due immediately. <u>See</u> Sentencing Tr. at 22:4-6 (Court). Judge Hansen noted that, pursuant to Lewis' plea agreement, "the defendant waives the right to appeal the final sentence imposed by this court under 18 U.S.C. § 3742(a)." Sentencing Tr. at 22:4-6 (Court). Last, Judge Hansen recommended that the BOP assign Lewis for incarceration at or near Beaumont, Texas. <u>See</u> Sentencing Tr. at 22:13-14 (Court). Following the sentencing hearing, Judge Hansen entered the Judgment, filed April 16, 2010 (Doc. 93), imposing Lewis' sentence. <u>See</u> Judgment at 1.

## PROCEDURAL BACKGROUND

At the time of Lewis' original sentencing, the PSR stated Lewis' advisory Guidelines base offense level as 26, pursuant to U.S.S.G. § 2D1.1. <u>See</u> PSR ¶ 25, at 9. The PSR concluded that, because Lewis possessed a dangerous weapon (including a firearm), his base offense level enhanced to 28. <u>See</u> PSR ¶ 26, at 10. The PSR also concluded that Lewis was a career offender, because he "was at least 18 years old at the time of the instant offense, the instant offense is a qualifying felony offense, and [Lewis] has at least two prior qualifying felony convictions . . . ." PSR ¶ 32, at 11. Regarding a 21 U.S.C. § 851 enhancement, the PSR stated:

> According to the Assistant United States Attorney in this case, an Information charging 21 U.S.C. § 851, Information Charging Prior Conviction, will not be filed, as the Information to which the defendant pled guilty indicates he committed the instant offense subsequent to a felony drug conviction and is therefore subject to enhanced penalties.

PSR ¶ 4, at 3. The USPO concluded that Lewis' offense level was 37, because his offense statutory

maximum, after applying the 21 U.S.C. § 851 enhancement, was life imprisonment. See PSR ¶ 32, at 11. The PSR stated that, "according to the plea agreement, the parties have stipulated the offense level is 34, pursuant to U.S.S.G. § 4B1.1(b)(B)." PSR ¶ 32, at 11. Applying a three-level reduction for acceptance of responsibility, the USPO concluded that Lewis' total offense level was 31. See PSR ¶¶ 33-34, at 11. Based on Lewis' criminal history, the USPO calculated his criminal history points as 21, and his criminal history category as VI, even without a career offender designation. See PSR ¶ 54, at 28. The USPO noted that Lewis "does not appear to have any circumstances that would take him away from the heartland of cases of similarly situated defendants." PSR ¶ 126, at 43. The USPO concluded, therefore, that there were no factors in Lewis' case warranting departure from the Guidelines range for an offense level of 31 and a criminal history category of VI, of 188 to 235 months. See PSR ¶ 126, at 43; U.S.S.G. Sentencing Table. The USPO also noted that an eight-year term of supervised release is statutorily required for Lewis' statute of conviction when a term of imprisonment is imposed. See PSR ¶ 110, at 40.

At the Plea Hearing, held before the Honorable Lorenzo F. Garcia, then-United States Magistrate Judge for the District of New Mexico, Lewis pled guilty to the Information. See Information at 1, filed November 3, 2009 (Doc. 72); PSR ¶ 4, at 3. See also Plea Minute Sheet at 1, filed November 3, 2009 (Doc. 76); Plea Agreement at 2. The Information charges that Lewis

> having been previously convicted of a felony drug offense of Possession of a Controlled Substance, in the Second Judicial District Court, Case No. D-202-CR-9802236, did unlawfully and knowingly possess with intent to distribute more than 5 grams of a mixture and substance containing a detectable amount of cocaine base, a Schedule II controlled substance. In violation of 21 U.S.C. §§ 841(a)(1) and

841(b)(1)(B)(iii).

Information at 1.  As a factual basis for his plea, Lewis provided the following:

7.  By my signature on this plea agreement, I, **JABSIE DWAYNE LEWIS**, am acknowledging that I am pleading guilty because I am in fact guilty of the offenses to which I am pleading guilty.  I recognize and accept responsibility for my criminal conduct.  Moreover, in pleading guilty, I acknowledge that if I chose to go to trial instead of entering this plea, the United States could prove facts sufficient to establish my guilt to the charges to which I am pleading guilty beyond a reasonable doubt.  I admit the following facts related to the charges against me, and declare under penalty of perjury that all facts are true and correct:

a.  On or about September 6, 2007, Albuquerque Police Officers responded to domestic dispute complaint [sic] at the residence of 6331 Duero NW, Albuquerque, Bernalillo County, New Mexico. Upon arrival, officers found me asleep on the couch in the living room and Ahmad Williams asleep on the floor of the living room.

b.  Officers searched the immediate area around me and found the handle of a loaded Hermann Weinrauch .357 firearm underneath the couch where I had been sleeping.  Officers also located a plastic bag containing cocaine, a plastic bag containing suspected cocaine base and a plastic bag containing suspected marijuana, on top of the couch, where I had been sleeping.  The substances tested positive for cocaine, cocaine base, and marijuana, respectively.  The cocaine weighed 3.5 gross grams, the cocaine base weighed 10.3 gross grams, and the marijuana weighed 3.1 gross grams.   When the officers searched me, they found a bag containing suspected cocaine base in my pant pocket.  The substance tested positive for cocaine base and weighed 23.2 gross grams.

c.  After being advised of my <u>Miranda</u> Rights [sic], I told the officers the cocaine and marijuana belonged to me.  I further admitted that I sold the cocaine base to "make some money."

d.  Investigators sent the drugs to a lab for analysis.  The lab confirmed the drugs were in fact cocaine and cocaine base, with a total equalling [sic] 5 or more grams of a mixture containing cocaine base.

e.  At the time of the incident, I was a career offender pursuant to

United States Sentencing Guidelines (U.S.S.G.) § 4b1.1(b). Specifically, I had the following prior felony convictions:

> I.  Aggravated Assault With A Deadly Weapon, a 4th Degree Felony, in the Second Judicial District Court, Case No. D-202-CR-9902789; and

> II.  False Imprisonment, a 4th Degree Felony, and Robbery, a 3rd Degree Felony, in the Second Judicial District Court, Case No. D-202-CR-9902789.

> f.  At the time of this incident, I also had a prior felony drug conviction of Possession of a Controlled Substance, a 4th Degree Felony, in the Second Judicial District Court, Case No. D-202-CR-9602246.

8.  By signing this agreement, I, **JABSIE DWAYNE LEWIS**, the Defendant admits all the foregoing facts and admits that there is a factual basis for each element of the crime(s) to which I will plead guilty.  Specifically, I agree that on or about September 6, 2007, in the District of New Mexico, I unlawfully and knowingly possessed with the intent to distribute more than five (5) grams of a mixture and substance containing a Cocaine base, and that at the time I had a prior felony drug conviction for Possession of a Controlled Substance, in the Second Judicial District Court, Case No. D-202-CR-9602246.

9.  I recognize and accept responsibility for my criminal conduct.  The Defendant agrees the Court may rely on any of these facts, as well as facts in the presentence report, to determine the Defendant's sentence, including, but not limited to, the advisory guideline offense level.

Plea Agreement ¶¶ 7-9, at 3-5.  See PSR ¶¶ 5(a)-(d), at 4.  Pursuant to the Plea Agreement, the

parties stipulated that "the offense level is 34, pursuant to U.S.S.G. § 4B1.1(b)."  PSR ¶ 5(c), at 4.

The Plea Agreement stipulates that Lewis will not seek a downward departure or any further

reduction, departure, deviation, or variance from the applicable sentencing guideline range, "as

determined by the Court after resolution of any objections by either party" to the PSR.  PSR ¶ 6(a),

at 4.  In the Plea Agreement, Lewis "knowingly waives the right to appeal his conviction and any

sentence at or under the maximum statutory penalty," and agrees to "waive any collateral attack to his convictions pursuant to 28 U.S.C. § 2255, except on the issue of ineffective assistance of counsel." PSR ¶ 6(j), at 5. Pursuant to the non-binding Plea Agreement,

> The defendant understands the stipulations are not binding on the Court and whether the Court accepts these stipulations is a matter solely within the discretion of the Court after it has reviewed the presentence report. Further, the defendant understands the Court may choose to vary from the advisory guideline range. The defendant understands that if the Court does not accept any one or more of the above stipulations and reaches an advisory guideline sentence different than expected by the defendant, or if the Court varies from the advisory guideline range, the defendant will not seek to withdraw the plea of guilty. In other words, regardless of any stipulations, the defendant's final sentence is solely within the discretion of the Court.

PSR ¶ 6(c), at 4-5.

1.      **The Motion.**

On February 11, 2019, Lewis filed the Motion. The primary issues are: (i) whether, pursuant to the First Step Act, Lewis is eligible for a sentence reduction; and (ii) whether, considering the 18 U.S.C. § 3553(a) factors, the Court should reduce Lewis' term of imprisonment from 188 months to 151 months, resulting in his immediate release. See Motion at 1. Lewis argues that the First Step Act "establishes its remedy in two steps, and it clearly applies to Mr. Lewis at each step." Motion at 3. First, Lewis argues that his drug offenses are "covered offenses" for the First Step Act's purposes, because he committed violations of 21 U.S.C. §§ 841(a) and 841(b)(1)(B)(iii), and he committed those offenses before August 3, 2010, as the First Step Act's definition of covered offenses requires. See Motion at 3 (citing First Step Act § 404(a)). Second, Lewis argues that the First Step Act applies to him, because Judge Hansen imposed a sentence on him for a covered offense. See Motion at 3 (citing First Step Act § 404(b)). Third, Lewis contends

that the First Step Act provides only "two narrow limitations on this resentencing power" and that neither of the limitations applies to him, because his sentence was not previously imposed or reduced in accordance with the First Step Act or the Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat. 2372 ("Fair Sentencing Act"), and because no previous motion made on his behalf under either act has been denied after a complete review on the merits. See Motion at 4-5 ("Lewis has not previously moved for a reduced sentence under Section 404 of the First Step Act of 2018, and his sentence was not previously imposed or previously reduced in accordance with sections 2 and 3 of the 2010 FSA.").

Lewis argues that, under the Fair Sentencing Act, he "would be subject to no mandatory minimum, and his statutory maximum would be 20 years." Motion at 5. Lewis contends that his career offender guideline changes, therefore, to a new offense level of 29, after a 3-level reduction for acceptance of responsibility -- compared to the previous adjusted offense level after acceptance of responsibility of 31. See Motion at 5 (citing U.S.S.G. § 4B1.1(b)(3)). Lewis contends that his Guidelines imprisonment range changes from 188 to 235 months, to a new advisory range of 151 to 188 months, and that he suggests a sentence of 151 months followed by five years of supervised release. See Motion at 5. Lewis also avers that the BOP used a good time calculation during Lewis' incarceration "that resulted in an inmate serving 87.14% of his sentence." Motion at 6. Lewis argues that he is eligible for relief under the First Step Act and that "imposition of a reduced sentence is consistent with the intention of Congress to remedy the disproportionate impact of the statutory penalties applied to crack cocaine offenses prior to 2010." Motion at 6.

Lewis contends that he has proven himself deserving of relief, as shown by his January 24,

2019, progress report, which shows that "while in custody he has completed his GED, and has taken dozens of self-improvement courses. His disciplinary history is remote and minor." Motion at 6. Lewis avers that he does not seek a resentencing hearing and instead asks the Court to resentence him as soon as possible. See Motion at 6.

**2.      The USPO Memo.**

Senior United States Probation Officer Victoria S. Loya of the USPO filed a Memorandum to assist the Court in assessing Lewis' First Step Act sentence reduction eligibility. See Memorandum, filed March 1, 2019 (Doc. 158)("USPO Memo."). The USPO notes that Lewis' original penalties were assessed according to 21 U.S.C. § 841(b)(1)(B), corresponding to between five and forty years imprisonment, but, because of his career offender designation and pursuant to 21 U.S.C. § 851, his statutory penalties became no less than ten years imprisonment, with a maximum of life. See USPO Memo. at 1. The USPO notes that, pursuant to the First Step Act, Lewis' penalties are amended to reflect those associated with violations of 21 U.S.C. § 841(b)(1)(C), which carries a maximum of twenty years imprisonment, but, because Lewis' career offender designation still applies, pursuant to 21 U.S.C. § 851, his statutory maximum is not more than thirty years imprisonment. See USPO Memo. at 1.

The USPO notes that Lewis' original sentencing calculations were performed using the 2009 U.S.S.G. Manual, which provided a base offense level of 28, adjusted to 26 pursuant to application note 10(D)(i). See USPO Memo. at 1. The USPO notes that, pursuant to U.S.S.G. § 2D1.1(b)(1), a two-level increase applied, resulting in an offense level of 28, which enhanced to 37, because of a career offender enhancement. See USPO Memo. at 1. The USPO

notes that, pursuant to Lewis' plea agreement, the parties stipulated to an offense level of 34, and that Judge Hansen used the parties' stipulated offense level of 34. <u>See</u> USPO Memo. at 1. The USPO notes that, finally, a reduction pursuant to U.S.S.G. § 3E1.1 applies, reducing the stipulated offense level -- which Judge Hansen used -- to 31. <u>See</u> USPO Memo. at 1.

The USPO argues that Lewis' revised calculations, using the 2018 U.S.S.G. Manual, result in a base offense level of 28 which, after applying the 2-level increase pursuant to U.S.S.G. § 2D1.1(b)(1), results in an offense level of 30. <u>See</u> USPO Memo. at 1. The USPO contends that, because the career offender qualification still applies, Lewis' offense level increases to 34. <u>See</u> USPO Memo. at 1. The USPO notes that, finally, a reduction pursuant to U.S.S.G. § 3E1.1 applies, reducing the offense level to 31. <u>See</u> USPO Memo. at 1. The USPO concludes that Lewis' calculations remain unchanged, and that, therefore, he is ineligible for a sentence reduction. <u>See</u> USPO Memo. at 2.

**3.      The Response.**

The United States responds to the Motion. <u>See</u> Response by the United States to the Defendant's Motion to Reduce Sentence, filed March 5, 2019 (Doc. 159)("Response"). In the Response, the United States argues that Lewis is ineligible for a First Step Act sentence reduction, because the First Step Act's application does not change his statutory penalties and sentencing exposure. <u>See</u> Response at 1. The United States reiterates the calculation that the USPO Memo. performs. <u>See</u> Response at 2-3. The United States avers, furthermore, that the First Step Act's § 404(c) "empowers the district court with discretion whether to reduce or not to reduce a defendant's sentence when the act states, 'Nothing in this section shall be construed to require a

court to reduce any sentence pursuant to this section.'" Response at 3 (quoting First Step Act § 404(c)). The United States requests that Lewis' status and sentencing exposure remain unchanged, and that the Court deny the Motion. See Response at 3.

4. **The Reply**.

Lewis replies. See Reply to Response From Probation and Government to Emergency Motion to Resentence, filed March 18, 2019 (Doc. 162)("Reply"). Lewis argues that the First Step Act's § 404, and not a Guidelines analysis, determines his First Step Act eligibility. See Reply at 1. Lewis avers that the First Step Act requires only three factors: (i) that the applicant was convicted of a covered offense; (ii) that the applicant did not receive any reduction under the Fair Sentencing Act; and (iii) that the applicant did not previously litigate a First Step Act motion. See Reply at 1-2. Lewis avers that he has met all three requirements. See Reply at 1-2.

Next, Lewis argues that the United States incorrectly argues that Lewis' statutory penalties remain unchanged, and that in fact, the USPO Memo. indicates that Lewis' statutory penalties changed from ten years to life, to not more than thirty years. See Reply at 2 (citing USPO Memo. at 1). Lewis contends he is eligible for a sentence reduction, because whether his Guidelines range has changed is not a First Step Act eligibility requirement. See Reply at 3. Lewis requests that the Court exercise its discretion in his favor, pursuant to the First Step Act's § 404, United States v. Booker, 543 U.S. 220 (2005), and 18 U.S.C. § 3553. See Reply at 3.

Lewis also argues that, pursuant to 21 U.S.C. § 851, to enhance a sentence because of a prior drug conviction, the United States must file an information with the court stating the prior convictions upon which it intends to rely, before entry of a guilty plea. See Reply at 3. Lewis

avers that no 21 U.S.C. § 851 notice was filed before entry of his guilty plea, although the Information referenced the convictions upon which the United States relied for application of 21 U.S.C. § 851. See Reply at 3. Lewis "concedes both that notice was given at the time of the guilty plea and that no contemporaneous objection was lodged." Reply at 4.

Next, Lewis argues that, under the First Step Act's § 401, only certain predicate offenses may be used to enhance a sentence and a minor drug felony such as Lewis' "can no longer qualify as an § 851 predicate." Reply at 5. Lewis states that § 401 may not apply at re-sentencing, but, regardless, is "relevant to this Court's exercise of discretion." Reply at 5. Last, Lewis notes that he attaches several letters which attest to his rehabilitation and growth. See Reply at 5-6.

**5.      The List.**

The United States Sentencing Commission created a list of First Step Act-eligible offenders for the United States District Court for the District of New Mexico's reference. See Offenders Eligible for Retroactive Application of the Fair Sentencing Act Sec. 404 of the First Step Act of 2018 Limited to Offenders in Prison District of New Mexico, filed March 22, 2019 (Doc. 167)("List"). The List includes thirteen defendants that the District of New Mexico sentenced, whom the Sentencing Commission identified as eligible for First Step Act relief, and who were still in prison as of May 26, 2018. See List at 1. The List includes the following information for each of the thirteen defendants identified: (i) name; (ii) docket number; (iii) original sentence date; (iv) original sentencing judge; (v) current projected release date; (vi) new estimated release date; and (vii) citizenship status. See List at 1. The List does not

include Lewis among the thirteen defendants identified.  See List at 1.

6.      **The List Response.**

Lewis filed a response to the List.  See Response to Notice of USSC List, filed April 1, 2019 (Doc. 168)("List Response").  In the List Response, Lewis argues that the List is "incomplete, and both over inclusive and under inclusive."  List Response at 1.  Lewis argues that, other than any mandatory minimum that applies pursuant to the Fair Sentencing Act's § 2, the First Step Act "places no restriction on what a court may consider in imposing a reduced sentence."  List Response at 1.  Lewis argues that the Sentencing Commission lists produced to assist courts in preparing for resentencing initiatives have historically been used as cross-checks and not to determine eligibility.  See List Response at 1-2.

Lewis argues that, "[b]ased on emails from the data person at the Sentencing Commission provided to Sentencing Resource Counsel by Defender Offices, the Sentencing Commission excluded from its lists any defendant whose guideline range was (in its view) unchanged."  List Response at 2.  Lewis contends that this exclusion (i) "reflects the Commission's policy statement restricting eligibility for retroactive guideline reductions," which Lewis avers does not apply here; (ii) unconstitutionally treats the Guidelines as mandatory; and (iii) "may appear to deem anyone not on the list to be ineligible," although the First Step Act does not give the Sentencing Commission "authority to determine eligibility."  List Response at 2.  Lewis argues that the lists also exclude defendants sentenced between August 3, 2010, and June 21, 2012, although, pursuant to Dorsey v. United States, 567 U.S. 260 (2012), those defendants may be First Step Act eligible. See List Response at 2.  Lewis argues that the "data person at the Commission" also disclosed to

"Sentencing Resource Counsel" that the lists "exclude anyone that could not be matched to BOP data," which, Lewis contends, "may be as high as 10 percent." List Response at 2. Lewis argues that the Sentencing Commission's lists "exclude between 50 percent and 90 percent of eligible defendants, according to reports from Defender Offices," and that reliance on the List to determine a defendant's eligibility would constitute "clear error." List Response at 2. Lewis then lists several cases from other districts in which "Article III judges have found individuals eligible for resentencing pursuant to the First Step Act notwithstanding their absence from the USSC lists for their districts." List Response at 3-5. For the foregoing reasons, Lewis "moves this Court to determine his eligibility for a reduced sentence based on Section 404 of the First Step Act and the factors in 18 U.S.C. § 3553." List Response at 5.

## RELEVANT LAW REGARDING THE GUIDELINES

In <u>United States v. Booker</u>, 543 U.S. 220 (2005), the Supreme Court of the United States severed the mandatory provisions from the Sentencing Reform Act, Pub. L. No. 98-473, 98 Stat. 1976, thus making Guidelines sentencing ranges effectively advisory. In excising the two sections, the Supreme Court left the remainder of the Sentencing Reform Act intact, including 18 U.S.C. § 3553: "Section 3553(a) remains in effect, and sets forth numerous factors that guide sentencing. Those factors in turn will guide appellate courts, as they have in the past, in determining whether a sentence is unreasonable." <u>United States v. Booker</u>, 543 U.S. at 261.

Congress has directed sentencing courts to impose a sentence "sufficient, but not greater than necessary" to comply with four statutorily defined purposes enumerated in 18 U.S.C. § 3553(a)(2):

(A)     to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B)     to afford adequate deterrence to criminal conduct;

(C)     to protect the public from further crimes of the defendant; and

(D)     to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . .

18 U.S.C. § 3553(a)(2)(A)-(D).

[A] defendant who has been found guilty of an offense described in any Federal statute . . . shall be sentenced in accordance with the provisions of this chapter so as to achieve the purposes set forth in subparagraphs (A) through (D) of section 3553(a)(2) to the extent that they are applicable in light of all the circumstances of the case.

18 U.S.C. § 3551.  To achieve these purposes, § 3553(a) directs sentencing courts to consider:

(i) the Guidelines; (ii) the nature of the offense and of the defendant's character; (iii) the available sentences; (iv) the policy favoring uniformity in sentences for defendants who commit similar crimes; (v) the need to provide restitution to victims; and (vi) any pertinent United States Sentencing Commission policy statements in effect on the date of sentencing.  See 18 U.S.C. § 3553(a)(1), (3)-(7).

Although the Guidelines are no longer mandatory, both the Supreme Court and the United States Court of Appeals for the Tenth Circuit have clarified that, while the Guidelines are one of several factors which § 3553(a) enumerates, they are entitled to careful consideration.  See Rita v. United States, 551 U.S. 338, 349 (2007)("The Guidelines as written reflect the fact that the Sentencing Commission examined tens of thousands of sentences and worked with the help of

many others in the law enforcement community over a long period of time in an effort to fulfill [its] statutory mandate."); United States v. Cage, 451 F.3d 585, 593 (10th Cir. 2006)(describing the Guidelines as more than "just one factor among many").  They are significant, because "the Guidelines are an expression of popular political will about sentencing that is entitled to due consideration . . . [and] represent at this point eighteen years' worth of careful consideration of the proper sentence for federal offenses."  United States v. Cage, 451 F.3d at 593 (internal quotation marks omitted)(quoting United States v. Terrell, 445 F.3d 1261, 1265 (10th Cir. 2006)).  A reasonable sentence is one that also "avoid[s] unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."  18 U.S.C. § 3553(a).  See United States v. Booker, 543 U.S. at 261-62.

The Tenth Circuit has "joined a number of other circuits in holding that a sentence within the applicable Guidelines range is presumptively reasonable."  United States v. Terrell, 445 F.3d 1261, 1264 (10th Cir. 2006), overruled on other grounds by Rita v. United States, 551 U.S. 338, 349 (2007), as recognized in United States v. Zamora-Solorzano, 528 F.3d 1247, 1251 n.3 (10th Cir. 2008).  This presumption, however, is an appellate presumption, and not one that the trial court can or should apply.  See Gall v. United States, 552 U.S. 38, 46-47 (2007); Kimbrough, 552 U.S. at 90-91; Rita v. United States, 551 U.S. at 351.  Instead, the trial court must undertake the § 3553(a) balancing of factors without any presumption in favor of the advisory[9] Guidelines

---

[9]Attorneys and courts often say that the "Guidelines" are advisory, but it appears more appropriate to say that the resulting Guidelines ranges are advisory.  Gall v. United States, 552 U.S. at 46 ("As a result of our decision [in United States v. Booker], the Guidelines are now advisory . . . .");  United States v. Leroy, 298 F. App'x 711, 712 (10th Cir.

2008)(unpublished)("[T]he Guidelines are advisory, not mandatory."); United States v. Sells, 541 F.3d 1227, 1237 (10th Cir. 2008)("[T]he sentence ultimately imposed by the district court was based on a correctly calculated Guidelines range, a stated consideration of the § 3553(a) factors, and an understanding that the Guidelines are advisory."). The Court must consider the Guidelines, see Gall v. United States, 552 U.S. at 46 ("It is . . . clear that a district judge must give serious consideration to the extent of any departure from the Guidelines . . . ."), and must accurately calculate the Guidelines range, see Gall v. United States, 552 U.S. at 49 ("[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range."). The Court is not mandated, however, to apply a sentence within the calculated Guidelines range. See United States v. Sierra-Castillo, 405 F.3d 932, 936 n.2 (10th Cir. 2005)("[D]istrict courts post-Booker have discretion to assign sentences outside of the Guidelines-authorized range . . . ."). Accord United States v. Chavez-Rodarte, No. CR 08-2499 JB, 2010 WL 3075285, at *2-3 (D.N.M. July 16, 2010)(Browning, J.).

The Court must adhere to the following three-step sequence when sentencing a criminal defendant: first, determining the appropriate sentencing range on the basis of Guidelines' chapters 2 through 4; next, applying Guidelines-contemplated departures based on parts 5H and 5K; and, only then, varying from the Guidelines framework on the basis of the § 3553(a) factors taken as a whole. The Court must follow this sequence, because: (i) the Guidelines expressly provide for it, and courts must still consult the Guidelines, even if they will subsequently vary from them in the third step of the sequence; and (ii) adherence to this sequence is the only way to give effect to 18 U.S.C. § 3553(e).

. . . .

The Supreme Court held in United States v. Booker that "district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing," 543 U.S. at 264, but further expounded in Kimbrough v. United States that "courts may vary [from the Guidelines ranges] based solely on policy considerations, including disagreements with the Guidelines," 552 U.S. 85, 101 (2007)(alteration in original)(internal quotation marks omitted). In theory, this freedom could mean that a district court may excise individual portions of the Guidelines along the way as it performs an otherwise by-the-book Guidelines analysis, end up with a sentence with built-in variances, and never even know what sentence a true, rigid Guidelines application would yield. In practice, however, appellate courts expect district courts to first obtain the true Guidelines' sentence range and circumscribe their United States v. Booker-granted authority to post-Guidelines analysis "variances." Irizarry v. United States, 553 U.S. 708, 710-16 (2008). A district court that attempts to vary from U.S.S.G. § 1B1.1's basic sequence most likely acts procedurally unreasonably. See

sentence.  <u>See</u> <u>Rita v. United States</u>, 551 U.S. at 351; <u>Gall v. United States</u>, 552 U.S. at 46-47;

<u>Kimbrough</u>, 552 U.S. at 90-91.

> While the Supreme Court's decision in <u>United States v. Booker</u> has given the sentencing court discretion that it did not have earlier, the sentencing court's first task remains to accurately and correctly determine the advisory-guideline sentence. Thus, before the sentencing court takes up a defendant's <u>Booker</u> arguments, the sentencing court must first determine whether the defendant is entitled to downward departures.  The sentencing court may, however, also use these same departure factors in the <u>Booker</u> calculus, even if the court does not grant a downward departure.

<u>United States v. Apodaca-Leyva</u>, No. CR 07-1479 JB, 2008 WL 2229550, at *6 (D.N.M. Feb. 13,

2008)(Browning, J.).  The Supreme Court has recognized, however, that sentencing judges are "in

a superior position to find facts and judge their import under § 3553(a) in each particular case."

<u>Kimbrough</u>, 552 U.S. at 89.  Applying § 3553(a)'s factors, the Court has concluded that the case

of an illegal immigrant who re-entered the United States to provide for his two children and two

siblings was not materially differentiated from other re-entry cases, and, thus, no variance from

the Guidelines sentence was warranted.  <u>See</u> <u>United States v. Almendares-Soto</u>, No. CR 10-1922

JB, 2010 WL 5476767, at *12 (D.N.M. Dec. 14, 2010)(Browning, J.).  On the other hand, in <u>United</u>

<u>States v. Jager</u>, No. CR 10-1531 JB, 2011 WL 831279 (D.N.M. Feb. 17, 2011)(Browning, J.),

---

<u>Gall v. United States</u>, 552 U.S. 38, 51 (2007)(holding that a sentence is procedurally reasonable if "the district court committed no significant procedural error, <u>such as failing to calculate (or improperly calculating) the Guidelines range</u>, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence" (emphasis added)).

United States    v.   Nolf,    30    F. Supp. 3d    1200,    1222-24,    (D.N.M.    June    20, 2014)(Browning, J.)(emphasis in original).

although the defendant's military service was not present to an unusual degree and, thus, did not warrant a departure, the Court concluded that a variance was appropriate, because the defendant's military service was "superior and uniformly outstanding," as the defendant appeared to have been "trustworthy[] and dedicated, and he served with distinction."  2011 WL 831279, at *14.

## LAW REGARDING THE BURDEN OF PROOF REQUIRED FOR ENHANCEMENTS UNDER THE GUIDELINES

In Apprendi v. New Jersey, 530 U.S. 466 (2000), the Supreme Court reaffirmed the principle that it is permissible for sentencing judges "to exercise discretion -- taking into consideration various factors relating both to offense and offender -- in imposing judgment within the range prescribed by statute."  530 U.S. at 481.  The Supreme Court cautioned, however, that the Constitution of the United States of America limits this discretion and the Sixth Amendment to the Constitution requires that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  Apprendi v. New Jersey, 530 U.S. at 490.  In Blakely v. Washington, 542 U.S. 296 (2004), the Supreme Court elaborated on its holding in Apprendi v. New Jersey, stating that the "'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant."  Blakely v. Washington, 542 U.S. at 303 (emphasis and citations omitted). In United States v. Booker, however, the Supreme Court held that, because the sentencing guidelines are no longer mandatory, "*Apprendi* does not apply to the present advisory-Guidelines regime."  United States v. Ray, 704 F.3d 1307, 1314 (10th Cir. 2013).  See United States v. Booker,

543 U.S. at 259 ("[W]ithout this provision [of the Guidelines statute] -- namely, the provision that makes the relevant sentencing rules mandatory and imposes binding requirements on all sentencing judges -- the statute falls outside the scope of *Apprendi's* requirement."(alterations and internal quotations marks omitted)).  More recently, the Supreme Court held that the requirements in Apprendi v. New Jersey apply to facts that increase a defendant's mandatory minimum sentence.  See Alleyne v. United States, 570 U.S. 99, 103 (2013).

In United States v. Magallanez, 408 F.3d 672 (10th Cir. 2005), the Tenth Circuit held that Blakely v. Washington and United States v. Booker did not change the district court's enhancement findings analysis.  See United States v. Magallanez, 408 F.3d at 684-85.  United States v. Magallanez involved plain-error review of a drug sentence in which a jury found the defendant guilty of conspiracy to possess with intent to distribute and to distribute, methamphetamine.  See 408 F.3d at 676.  As part of its verdict, the jury, through a special interrogatory, attributed to the defendant 50-500 grams of methamphetamine; at sentencing, however, the judge -- based on testimony of the various amounts that government witnesses indicated they had sold to the defendant -- attributed 1200 grams of methamphetamine to the defendant and used that amount to increase his sentence under the Guidelines.  See 408 F.3d at 682.  The district court's findings increased the defendant's Guidelines sentencing range from 63 to 78 months to 121 to 151 months.  See 408 F.3d at 682-83.  On appeal, the Tenth Circuit stated that, both before and after Congress' passage of the Sentencing Reform Act, "sentencing courts maintained the power to consider the broad context of a defendant's conduct, even when a court's view of the conduct conflicted with the jury's verdict."  408 F.3d at 684.  Although United States

v. Booker made the Guidelines ranges "effectively advisory," the Tenth Circuit reaffirmed that "district courts are still required to consider Guideline ranges, which are determined through application of the preponderance standard, just as they were before." United States v. Magallanez, 408 F.3d at 685 (citation omitted).

The Tenth Circuit, while "recognizing 'strong arguments that relevant conduct causing a dramatic increase in sentence ought to be subject to a higher standard of proof,'" has "long held that sentencing facts in the 'ordinary case' need only be proven by a preponderance." United States v. Olsen, 519 F.3d 1096, 1105 (10th Cir. 2008)(quoting United States v. Washington, 11 F.3d 1510, 1516 (10th Cir. 1993)).[10] "[T]he application of an enhancement . . . does not implicate

---

[10]Although the Tenth Circuit stated in United States v. Washington that "the issue of a higher than a preponderance standard is foreclosed in this circuit," 11 F.3d at 1516, the Tenth Circuit has since classified its holding as leaving "open the possibility that due process may require proof by clear and convincing evidence before imposition of a Guidelines enhancement that increases a sentence by an 'extraordinary or dramatic' amount," United States v. Ray, 704 F.3d at 1314 (quoting United States v. Olsen, 519 F.3d at 1105). See United States v. Olsen, 519 F.3d 1105 (affirming the use of the preponderance-of-the-evidence standard for sentencing facts that increase a sentence in the "'ordinary case'" (quoting United States v. Washington, 11 F.3d at 1516)). The Tenth Circuit has not yet found that an "extraordinary or dramatic" instance warrants a higher standard of proof for certain facts that enhance a defendant's sentence. United States v. Olsen, 519 F.3d at 1105 (explaining that it need not determine whether a higher standard of proof is required to sentence a defendant for committing perjury in relation to a grand jury investigation, because the enhancement did not require the district court to determine that the defendant committed murder, but only that he obstructed a homicide investigation). See United States v. Constantine, 263 F.3d 1122, 1125 n.2 (10th Cir. 2001)(affirming a preponderance-of-the-evidence standard for facts that enhance a defendant's offense level 4 levels); United States v. Valdez, 225 F.3d 1137, 1143 n.2 (10th Cir. 2000)(rejecting the defendant's argument that a dramatic increase in a sentence because of a sentencing judge's finding of additional amounts of methamphetamine associated with acquitted charges entitled the defendant to a clear-and-convincing evidence standard at sentencing, and noting that the Tenth Circuit "foreclosed by binding precedent" this argument); United States v. Washington, 11 F.3d at 1516 (finding that a district court need not find by any more than a preponderance of the evidence the amount of cocaine a defendant distributed,

the Supreme Court's holding in <u>Apprendi v. New Jersey</u>." <u>United States v. Reyes-Vencomo</u>, No. CR 11-2563 JB, 2012 WL 2574810, at *3 (D.N.M. June 26, 2012)(Browning, J.). The Tenth Circuit applies <u>Apprendi v. New Jersey</u>'s requirement that a fact be submitted to a jury only where the fact would increase a defendant's sentence "above the statutory maximum permitted by the statute of conviction." <u>United States v. Price</u>, 400 F.3d 844, 847 (10th Cir. 2005). <u>Accord</u> <u>United States v. Ray</u>, 704 F.3d at 1314. A defendant may assert an error under <u>Apprendi v. New Jersey</u> only where the fact at issue increased his sentence beyond the statutory maximum. <u>See</u> <u>United States v. O'Flanagan</u>, 339 F.3d 1229, 1232 (10th Cir. 2003)(holding that a defendant could not assert an error under <u>Apprendi v. New Jersey</u>, because "his sentence does not exceed the statutory maximum"); <u>United States v. Hendrickson</u>, 2014 WL 6679446, at *6 (10th Cir. 2014)(unpublished)[11](holding that, after <u>Alleyne v. United States</u>, "[i]t is well-established that

_____

even though its findings increased the defendant's sentence from twenty years to consecutive forty-year terms).

[11]<u>United States v. Hendrickson</u> is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it. <u>See</u> 10th Cir. R. 32.1(A) ("Unpublished decisions are not precedential, but may be cited for their persuasive value."). The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . [a]nd we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

<u>United States v. Austin</u>, 426 F.3d 1266, 1274 (10th Cir. 2005). The Court concludes <u>United States v. Hendrickson</u>, <u>United States v. Fulton</u>, 433 F. App'x 692 (10th Cir. 2011), <u>United States v. Mitchell</u>, 653 F. App'x 639 (10th Cir. 2016), and <u>United States v. Leroy</u>, 298 F. App'x 711 (10th Cir. 2008), have persuasive value with respect to a material issue, and will assist the Court in its disposition of this Memorandum Opinion and Order.

sentencing factors need not be charged in an indictment and need only be proved to the sentencing

judge by a preponderance of the evidence").  The Court has noted:

> [A]lthough the decision of the Supreme Court of the United States in _Alleyne v. United States_, . . . 133 S. Ct. 2151 . . . (2013), expands the rule from _Apprendi v. New Jersey_, 530 U.S. 466 . . . (2000)(holding that facts that increase the maximum sentence a defendant faces must be proven to a jury beyond a reasonable doubt), to cover facts that increase the mandatory minimum sentence, as well as the maximum sentence, it does not prohibit district judges from continuing to find advisory sentencing factors by a preponderance of the evidence.  _See [United States v. Sangiovanni_,] 2014 WL 4347131, at *22-26 [(D.N.M. 2014)(Browning, J.)].

United States v. Cervantes-Chavez, No. CR 14-0259 JB, 2014 WL 6065657, at *14 (D.N.M. Nov.

3, 2014)(Browning, J.).

## LAW REGARDING THE FIRST STEP ACT

A federal district court may modify a defendant's sentence where Congress has specifically

authorized it to do so.  See 18 U.S.C. § 3582(c)(1)(B)(permitting a court to modify an imposed

term of imprisonment "to the extent otherwise expressly permitted by statute or by Rule 35 of the

Federal Rules of Criminal Procedure");[12] United States v. Blackwell, 81 F.3d 945, 947 (10th Cir.

---

[12]Rule 35 of the Federal Rules of Criminal Procedure outlines the circumstances under which a court may correct or reduce a sentence.  See Fed. R. Crim. P. 35.  Rule 35(a) permits a court, within fourteen days after sentencing, to correct a sentence "that resulted from arithmetical, technical, or other clear error."  Fed. R. Crim. P. 35(a).  Rule 35(b)(1) permits a court, upon the government's motion made within one year of sentencing, to reduce a sentence if the defendant, "after sentencing, provided substantial assistance in investigating or prosecuting another person."  Fed. R. Crim. P. 35(b).  Rule 35(b)(2) permits the court to reduce a defendant's sentence upon the government's motion made more than one year after sentencing if the defendant's substantial assistance involved information either not known to the defendant until one year or more after sentencing, information which the defendant provided to the government within one year after sentencing, but which did not become useful until more than one year after sentencing, or information the usefulness of which the defendant could not have reasonably anticipated until more than one year after sentencing, and which the defendant promptly provided to the government after

1996)("A district court is authorized to modify a Defendant's sentence only in specified instances where Congress has expressly granted the court jurisdiction to do so.").  See also United States v. Hardage, 58 F.3d 569, 574 (10th Cir. 1995)("[W]ith the exception of certain powers which truly fit the rubric of 'inherent power.' . . . federal courts cannot act in the absence of statutory authority."); United States v. Caterino, 29 F.3d 1390, 1394 (9th Cir. 1994)("The authority to change a sentence must derive from some federal statutory authority.").

On December 21, 2018, the President signed the First Step Act into law.  See First Step Act.  The First Step Act's § 404 makes the Fair Sentencing Act's sections 2 and 3 retroactive.  See First Step Act § 404.  The full text of the First Step Act's § 404 is as follows:

### SEC. 404.  APPLICATION OF FAIR SENTENCING ACT.

(a) DEFINITION OF COVERED OFFENSE. -- In this section, the term "covered offense" means a violation of a Federal Criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372), that was committed before August 3, 2010.

(b) DEFENDANTS PREVIOUSLY SENTENCED. -- A court that imposed a sentence for a covered offense may, on motion of the defendant, the Director of the Bureau of Prisons, the attorney for the Government, or the court, impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372) were in effect at the time the covered offense was committed.

(c) LIMITATIONS. -- No court shall entertain a motion made under this section to reduce a sentence if the sentence was previously imposed or previously reduced in accordance with the amendments made by sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372) or if a previous motion made under this section to reduce the sentence was, after the date of enactment of this Act, denied after a complete review of the motion on the merits.  Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this

_____

its usefulness became reasonably apparent to the defendant.  See Fed. R. Crim. P. 35(b)(2)(A)-(C).

section.

First Step Act § 404. The full text of the Fair Sentencing Act's sections 2 and 3 is as follows:

### SEC. 2. COCAINE SENTENCING DISPARITY REDUCTION.

(a) CSA. -- Section 401(b)(1) of the Controlled Substances Act (21 U.S.C. 841(b)(1)) is amended --

<< 21 USCA § 841 >>

    (1) in subparagraph A(iii), by striking "50 grams" and inserting "280 grams"; and

<< 21 USCA § 841 >>

    (2) in subparagraph (B)(iii), by striking "5 grams" and inserting "28 grams".

(b) IMPORT AND EXPORT ACT. -- Section 1010(b) of the Controlled Substances Import and Export Act (21 U.S.C. 960(b)) is amended --

<< 21 USCA § 960 >>

    (1) in paragraph (1)(C), by striking "50 grams" and inserting "280 grams"; and

<< 21 USCA § 960 >>

    (2) in paragraph (2)(C), by striking "5 grams" and inserting "28 grams".

<< 21 USCA § 844 >>

### SEC. 3. ELIMINATION OF MANDATORY MINIMUM SENTENCE FOR SIMPLE POSSESSION.

Section 404(a) of the Controlled Substances Act (21 U.S.C. 844(a)) is amended by striking the sentence beginning "Notwithstanding the preceding sentence,".

Fair Sentencing Act §§ 2-3.

Section 404 is the only First Step Act provision that applies retroactively to already sentenced defendants. See First Step Act § 404. See also United States v. Gonzalez-Oseguera,

Crim. No. 06-00593 HG-01, 2019 WL 1270916, at *1 (D. Haw. March 19, 2019)(Gillmor, J.)(stating that "[t]here are a number of reforms in the First Step Act, but Section 404 is the only provision that applies retroactively to defendants who have already been sentenced"). Section 404 permits a federal district court to resentence a defendant based on the Fair Sentencing Act's revised statutory penalties for crack cocaine offenses. See First Step Act § 404. To be eligible for relief under the First Step Act's § 404, a defendant must have been convicted and sentenced for a covered offense, as defined in the First Step Act's § 404(a). See First Step Act § 404(a). To be convicted of a covered offense, a defendant (i) must have been convicted for violating a federal criminal statute, for which the Fair Sentencing Act's §§ 2-3's modified the penalties; and (ii) have committed that offense before August 3, 2010. See First Step Act § 404(a). See also United States v. Gonzalez-Oseguera, 2019 WL 1270916, at *2 (stating that defendant was not convicted of a covered offense, because defendant was convicted of an offense involving methamphetamine, for which the Fair Sentencing Act's §§ 2-3 did not modify the statutory penalties); United States v. Drayton, CRIMINAL ACTION No. 10-20018-01-KHV, 2019 WL464872, at *2 (D. Kan. Feb. 6, 2019)(Vratil, J.)(concluding that the court lacked jurisdiction to reduce the defendant's sentence under the First Step Act, where the defendant was convicted of an offense involving powder cocaine and marijuana). The statute of conviction, not the defendant's conduct, controls First Step Act eligibility. See, e.g., United States v. Davis, 07-CR-245S(1), 2019 WL 1054554, at *2 (W.D.N.Y. March 6, 2019)(Skretny, J.)(rejecting the government's argument that a defendant was not First Step Act eligible, because, if the Fair Sentencing Act had been in place when the offense was convicted, the indictment would have

alleged a greater quantity of drugs as required to trigger the penalties, because "it is the statute of conviction, not actual conduct, that controls eligibility under the First Step Act").

Although a defendant may be eligible for First Step Act relief, whether that relief is warranted is a separate inquiry. See First Step Act § 404(c) (stating that "nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section"). The First Step Act is silent regarding what a court may consider in determining whether resentencing of a First Step Act-eligible defendant is warranted. See First Step Act § 404. Federal district courts are split regarding whether a court reconsidering a sentence under the First Step Act may consider only whether a defendant's Guidelines numbers change or whether the court may also consider anew the 18 U.S.C. § 3553(a) factors. Compare, e.g., United States v. Davis, 2019 WL 1054554, at *2, with United States v. Tucker, 356 F. Supp. 3d 808, 810 (S.D. Iowa Jan. 23, 2019)(Pratt, J). Several federal district courts that have thus far addressed First Step Act motions have concluded that a First Step Act resentencing is like an 18 U.S.C. § 3582(c) proceeding, and accordingly that: (i) the First Step Act does not permit plenary resentencing; and (ii) the First Step Act only "contemplates a recalculation of a defendant's Guidelines numbers under the Fair Sentencing Act and a possible sentencing reduction consistent therewith, if warranted," United States v. Davis, 2019 WL 1054554, at *2. See United States v. Sampson, 00-CR-6083L, 2019 WL 1141528, at *2 (W.D.N.Y. March 13, 2019)(Larimer, J.)(stating that "a full resentencing is neither required nor called for" by the First Step Act); United States v. Potts, CASE NO. 2:98-cr-14010-ROSENBERG, 2019 WL 1059837, at *2 (S.D. Fla. March 6, 2019)(Rosenberg, J.)(concluding that all other determinations -- such as the length of supervised release assigned -- made at the time of

sentencing other than those relating to recalculation of imprisonment time based on the Fair Sentencing Act's sections 2 and 3, must remain unchanged); United States v. Logan, CRIMINAL ACTION No. 07-20090-01-KHV, 2019 WL 498519, at *1 (D. Kan. Feb. 8, 2019)(Vratil, J.)(same).[13]

First Step Act motions for sentence reduction are 18 U.S.C. § 3582(c)(2) proceedings. Section 3582(c)(2) "authorizes a district court to reduce an otherwise final sentence pursuant to a Guidelines amendment if a reduction is consistent with the [United States Sentencing] Commission's policy statements." Dillon v. United States, 560 U.S. 817, 818 (2010).[14] Section 3582(c)(2)'s Guidelines policy statement U.S.S.G. § 1B1.10, lists among its covered amendments

---

[13]The First Step Act does not mandate the defendant's presence at a hearing. See First Step Act § 404. Several federal district courts have stated that 18 U.S.C. § 3582(c)(1)(B) governs First Step Act motions. See, e.g., United States v. Delaney, 2019 WL 861418, at *1 ("Modifications of sentences under the First Step Act are governed by 18 U.S.C. § 3582(c)(1)(B) . . . ."); United States v. Fountain, Criminal Case No. 1:09-cr-00013-MR-WCM-9, 2019 WL 637715, at *2 (W.D.N.C. Feb. 14, 2019)(treating defendant's Motion for Amended Judgement under the First Step Act as an 18 U.S.C. § 3582(c)(1)(B) motion); United States v. Copple, Case No. 17-cr-40011-JPG-009, 2019 WL 486440, at *1 (S.D. Ill. Feb. 7, 2019)(construing First Step Act motion under 18 U.S.C. § 3582(c)(1)(B)). Rule 43(b)(4) of the Federal Rules of Criminal Procedure states that a defendant need not be present for an 18 U.S.C. § 3582(c)(1)(B) resentencing. See Fed. R. Crim. P. 43(b)(4). Accordingly, federal district courts reviewing First Step Act Motions generally have concluded that a First Step Act defendant is not entitled to a hearing. See, e.g., United States v. Davis, 2019 WL 1054554, at *2 (concluding that Davis' presence was not required at his First Step Act resentencing). The Court concludes that, pursuant to rule 43(b)(4) of the Federal Rules of Civil Procedure and 18 U.S.C. §3582(c)(1), a First Step Act defendant is not entitled to a hearing.

[14]Section "3582(c)(2) represents a congressional act of lenity intended to give prisoners the benefit of later enacted adjustments to the judgments reflected in the Guidelines." Dillon v. United States, 560 U.S. at 828.

Amendment 750, which the United States Sentencing Commission promulgated to effectuate the Fair Sentencing Act , see U.S.S.G. § 1B1.10(d). Guidelines Amendment 750 altered the Guidelines' drug-quantity tables, "increasing the required quantity to be subject to each base offense level in a manner proportionate to the statutory change to the mandatory minimums effectuated by the [Fair Sentencing Act]." United States v. Osborn, 679 F.3d 1193, 1194 (10th Cir. 2012)(internal quotation marks omitted)(quoting United States v. Curet, 670 F.3d 296, 309 (1st Cir. 2012)). See U.S.S.G. app. C, amend. 750 (effective Nov. 1, 2011). Guidelines Amendment 759 subsequently made Amendment 750 retroactive.[15] See U.S.S.G. app. C, amend. 759 (effective Nov. 1, 2011). The Guidelines policy statement U.S.S.G. § 1B1.10 corresponds to Guidelines Amendment 759, and states that, in cases "in which a defendant is serving a term of imprisonment, and the guideline range applicable to that defendant has subsequently been lowered as a result of" Amendment 750, "the court may reduce the defendant's term of imprisonment as provided by 18 U.S.C. § 3582(c)(2)," U.S.S.G. § 1B1.10(a)(1). The First Step Act's § 404 makes the Fair Sentencing Act's sections 2 and 3 -- which change the mandatory minimums -- retroactively applicable to covered offenses committed before the Fair Sentencing Act's enactment, so, because Fair Sentencing Act motions are 18 U.S.C. § 3582(c)(2) proceedings, the

---

[15]The United States Sentencing Commission has yet to promulgate a Guidelines amendment to officially effectuate the First Step Act. The First Step Act makes the Fair Sentencing Act applicable to covered offenses committed before the Fair Sentencing Act's enactment. The President signed the First Step Act into law after the United States Sentencing Commission released the latest version of the Guidelines Manual. See First Step Act (signed into law on December 21, 2018); United States Sentencing Commission, 2018 Guidelines Manual, https://www.ussc.gov/guidelines (last visited April 8, 2019)(stating that the 2018 Guidelines Manual became effective on November 1, 2018).

Court reasons that First Step Act motions are no different.  See First Step Act § 404.

In Dillon v. United States, the Supreme Court stated that 18 U.S.C. § 3582(c) establishes a two-step inquiry whereby a district court "must first determine that a reduction is consistent with § 1B1.10," and, at the second step, the district court "may consider whether the authorized reduction is warranted, either in whole or in part, according to the factors set forth in § 3553(a)." Dillon v. United States, 560 U.S. at 826.  The Supreme Court stated:

> Following this two-step approach, a district court proceeding under § 3582(c)(2) does not impose a new sentence in the usual sense.  At step one, § 3582(c)(2) requires the court to follow the Commission's instructions in § 1B1.10 to determine the prisoner's eligibility for a sentence modification and the extent of the reduction authorized.  Specifically, § 1B1.10(a)(1) requires the court to begin by "determin[ing] the amended guideline range that would have been applicable to the defendant" had the relevant amendment been in effect at the time of the initial sentencing.  "In making such determination, the court shall substitute only the amendments listed in subsection (c) for the corresponding guideline provisions that were applied when the defendant was sentenced and shall leave all other guideline application decisions unaffected."  § 1B1.10(b)(1).
>
> Consistent with the limited nature of § 3582(c)(2) proceedings, § 1B1.10(b)(2) also confines the extent of the reduction authorized.  Courts generally may "not reduce the defendant's term of imprisonment under 18 U.S.C. § 3582(c)(2) . . . to a term that is less than the minimum of the amended guideline range" produced by the substitution.  § 1B1.10(b)(2)(A).  Only if the sentencing court originally imposed a term of imprisonment below the Guidelines range does § 1B1.10 authorize a court proceeding under § 3582(c)(2) to impose a term "comparably" below the amended range.  § 1B1.10(b)(2)(B).
>
> At step two of the inquiry, § 3582(c)(2) instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by reference to the policies relevant at step one is warranted in whole or in part under the particular circumstances of the case.  Because reference to § 3553(a) is appropriate only at the second step of this circumscribed inquiry, it cannot serve to transform the proceedings under § 3582(c)(2) into plenary resentencing proceedings.

Dillon v. United States, 560 U.S. at 827.

The Court concludes that, although the First Step Act does not require a full resentencing with the defendant present, the First Step Act permits a court to consider the 18 U.S.C. § 3553(a) factors in determining whether a First Step Act-eligible defendant's circumstances warrant a sentence reduction, and to what extent the court should reduce his or her sentence. Section 3582(c)(2) permits a court to reduce a defendant's sentence pursuant to certain Guidelines amendments -- including the amendment promulgated to effectuate the Fair Sentencing Act -- "after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(2). The First Step Act's § 404(c) states, furthermore, that "nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section," suggesting that even if a defendant meets the First Step Act's eligibility requirements, a court may elect not to reduce his or her sentence. See First Step Act § 404(c). The First Step Act places no limitations on what a court may consider in resentencing a First Step Act-eligible defendant, and accordingly, the Court agrees with the federal district courts which have concluded that, as with any sentencing, the Court should ensure that the sentence imposed meets the goals of sentencing that 18 U.S.C. § 3553(a) outlines, namely, the need for the sentence to: (i) reflect the seriousness of the offense; (ii) promote respect for the law; (iii) provide just punishment; (iv) afford adequate deterrence, both specific and general; (v) protect the public from the defendant's further crimes; and (vi) avoid unwarranted sentencing disparities between similar defendants found guilty of similar crimes. See 18 U.S.C. § 3553(a). Although the Tenth Circuit and the Supreme Court have not yet addressed the issue, several federal district courts have

explicitly considered, in determining whether a sentence reduction is warranted for a First Step Act-eligible defendant, whether the sentence reduction is "in the interests of justice and furthers the purposes set forth in 18 U.S.C. § 3553(a)." United States v. Tucker, 356 F. Supp. 3d at 810 (considering as a factor relevant to resentencing that the First Step Act-eligible defendant "turned fifty last year, an age at which the Sentencing Commission has found that [the] recidivism rate begins to decline substantially"). See United States v. Fisher, Case No. 5:02CR30093, 2019 WL 1415469, at *2 (W.D. Va. March 28, 2019)(Jones, J.)(stating that the court, in a First Step Act case, finds "it appropriate in determining whether to reduce the defendant's sentence, and the extent of any such reduction, to consider the sentencing factors set forth in 18 U.S.C. § 3553(a)"); United States v. Fisher, Criminal Action No. 5:07-041-DCR, 2019 WL 1320047, at *1 (E.D. Ky. March 22, 2019)(Reeves, J.)(addressing first whether a defendant was eligible for a First Step Act reduction, and then whether the reduction was warranted in whole or in part, considering the 18 U.S.C. § 3553(a) factors); United States v. Matthews, CR. NO. 15-00636 HG, 2019 WL 1246184, at *1 (D. Haw. March 18, 2019)(Gillmor, J.)(same); United States v. Sanders, CAUSE NO.: 1:07-CR-38-TLS, 2019 WL 1198920, at *1 (N.D. Ind. March 14, 2019)(Springmann, C.J.)(same); United States v. Powell, 5:02-CR-206, 2019 WL 1198005, at *5 (N.D.N.Y. March 14, 2019)(Hurd, J.)(stating that, "[a]s in every case," in a First Step Act case, "the goals of sentencing outlined in 18 U.S.C. § 3553(a) have been reviewed . . . ."); United States v. Delaney, Case No. 6:08-cr-00012, 2019 WL 861418, at *1 (W.D. Va. Feb. 22, 2019)(Moon, J.)(addressing first whether a defendant was eligible for a First Step Act reduction, and then whether the reduction was warranted in whole or in part, considering the 18 U.S.C. § 3553(a) factors).

Courts may "not reduce the defendant's term of imprisonment under 18 U.S.C. § 3582(c)(2) . . . to a term that is less than the minimum of the amended guideline range," unless the reduction is "pursuant to a government motion to reflect the defendant's substantial assistance to authorities."  §§ 1B1.10(b)(2)(A)-(B).  See United States v. Dillon, 560 U.S. at 828 (holding that 18 U.S.C. § 3582(c)(2) proceedings do not implicate the interests which United States v. Booker identifies, and that 18 U.S.C. § 3582(c)(2) permissibly limits the circumstances under which a re-sentencing court may reduce a sentence below the minimum of the amended Guidelines range).  If the sentencing court originally imposed a below-Guidelines imprisonment term, however, § 1B1.10 authorizes a court proceeding under § 3582(c)(2) to impose a term "comparably" below the amended range.  § 1B1.10(b)(2)(B).  A court may not reduce a defendant's term of imprisonment to less than the term of imprisonment the defendant has already served.  See U.S.S.G. § 1B1.10(b)(2)(C) cmt. n.3 ("In no case, however, shall the term of imprisonment be reduced below time served.").  See also United States v. Sampson, 2019 WL 1141528, at *2 (stating that the appropriate remedy when a defendant is entitled to a sentence reduction that is greater than his time served, is to reduce his sentence to the time served); United States v. Laguerre, No. 02-cr-30098, 2019 WL 861417, at *3-4 (W.D. Va. Feb. 22, 2019)(advancing several reasons for not reducing a defendant's sentence below time served, including the need to protect the public, the need for deterrence, and the court's unwillingness to allow a defendant to bank time with respect to future offenses); United States v. Tucker, 356 F. Supp. 3d at 808 (reducing sentence to time served); Miller v. Cox, 443 F.2d 1019, 1021 (4th Cir. 1971)("[T]he availability of credits against sentences for future crimes would provide a sense

of immunity and an incentive to engage in criminal conduct.").

<h2 style="text-align:center"><u>ANALYSIS</u></h2>

The Court concludes that, having met the First Step Act's eligibility requirements, Lewis is eligible for First Step Act relief. The Court filed the List for reference but did not exclusively rely on the List in arriving at its determination of Lewis' eligibility. The Court also concludes that, assessing Lewis' Guidelines offense level pursuant to the First Step Act, and considering the 18 U.S.C. § 3553(a) factors, the Court will not reduce Lewis' term of imprisonment, which remains 188 months, followed by a term of supervised release of 8 years. This is not a time-served sentence, and Lewis is not eligible for immediate release. The Court denies the Motion.

**I.     LEWIS IS ELIGIBLE FOR FIRST STEP RELIEF, BECAUSE HIS SENTENCED OFFENSE IS "COVERED," AND NEITHER LEWIS NOR ANYONE ON LEWIS' BEHALF HAS MADE ANY PRIOR MOTION UNDER THIS SECTION.**

To be eligible for relief under the First Step Act's § 404, a defendant must have been convicted and sentenced for a covered offense, as the First Step Act's § 404(a) defines that term. <u>See</u> First Step Act § 404(a). A covered offense is a violation of a federal criminal statute, for which the Fair Sentencing Act's §§ 2-3 modified the penalties, committed before August 3, 2010. <u>See</u> First Step Act § 404(a). Lewis argues, and the United States does not dispute, that Lewis' drug offenses are "covered offenses" for the First Step Act's purposes, because he violated 21 U.S.C. §§ 841(a) and 841(b)(1)(B)(iii), and he committed those offenses before August 3, 2010. <u>See</u> Motion at 3 (citing First Step Act § 404(a)). <u>See</u> <u>generally</u> Response (not disputing either assertion), USPO Memo. (stating that, on April 13, 2010, Lewis was sentenced for violations of 21 U.S.C. §§ 841(a) and 841(b)(1)(B)(iii)). The United States avers that Lewis is not eligible

for sentence reduction, because he is a career offender, and because the First Step Act's application does not affect his statutory penalties and sentencing exposure. <u>See</u> Response at 1. The USPO does not contend that Lewis' career offender designation precludes him from seeking a First Step Act sentence reduction. <u>See</u> <u>generally</u> USPO Memo. Lewis contends that the First Step Act sets forth only three requirements for eligibility: (i) that the applicant was convicted of a covered offense; (ii) that the applicant did not receive any reduction under the Fair Sentencing Act; and (iii) that the applicant has not previously litigated a motion under the First Step Act. <u>See</u> Reply at 1-2. Lewis contends that he satisfies all three eligibility requirements and is eligible for a sentence reduction. <u>See</u> Reply at 3. Lewis argues that whether the Court will exercise its discretion to reduce Lewis' sentence in his favor is a separate inquiry. <u>See</u> Reply at 3. The Court agrees with Lewis that the First Step Act's only eligibility requirements are the three requirements which Lewis articulates. <u>See</u> Reply at 1-2; First Step Act § 404.

Lewis was convicted under 21 U.S.C. § 841, under subsections (a)(1) and (b)(1)(B)(iii). <u>See</u> PSR ¶ 3, at 3; USPO Memo. at 1; Information at 1. Lewis pled guilty to the Information, which charges a violation of 21 U.S.C. §§ 841(a)(1), and 841(b)(1)(B)(iii). <u>See</u> PSR ¶¶ 3-4, at 3; Plea Agreement ¶ 3, at 1. Lewis committed the offense at issue on September 6, 2007, and pled guilty on November 3, 2009. <u>See</u> PSR ¶¶ 3-4, at 3; Information at 1. Lewis committed the offense at issue before August 3, 2010. <u>See</u> PSR ¶ 3, at 3; Information at 1; First Step Act § 404(a) (stating that the term "covered offense" includes only crimes committed before August 3, 2010). The Fair Sentencing Act modified 21 U.S.C. § 841(b)(1)(B)(iii) by striking 5 grams and replacing it with 28 grams. <u>See</u> Fair Sentencing Act § 2(a)(2); First Step Act § 404(a) (stating that the term

"covered offense" means a violation of a Federal Criminal statute, for which section 2 or 3 of the Fair Sentencing Act modified the statutory penalties). The parties agree that Lewis has not received relief under the Fair Sentencing Act and that he has not previously litigated a First Step Act motion. See First Step Act § 404(c). Having satisfied the First Step Act's eligibility requirements, Lewis is eligible for First Step Act relief, and the Court will consider whether to reduce his sentence.

## II.  THE COURT, CONSIDERING THE 18 U.S.C. § 3553(a) FACTORS, WILL NOT REDUCE LEWIS' SENTENCE UNDER THE FIRST STEP ACT.

That a defendant is First Step Act-eligible does not necessitate that a court reduce that defendant's sentence. As the United States recognizes, the First Step Act's § 404(c) "empowers the district court with discretion whether to reduce or not to reduce a defendant's sentence when the act states, 'Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section.'" Response at 3 (quoting First Step Act § 404(c)).

First, the Court considers the impact that application of the First Step Act has on Lewis' advisory Guidelines range. Lewis was initially determined accountable for 3.10 grams of marijuana, 2.40 net grams of cocaine, and 25.06 grams of cocaine base. See PSR ¶ 19, at 8; USPO Memo. at 1. Lewis' sentence was originally calculated using the U.S.S.G. See PSR ¶ 24, at 9. Pursuant to application note 10(B) to U.S.S.G. § 2D1.1,[16] Lewis was, thus, initially accountable

---

[16]Application note 10(B) to U.S.S.G. § 2D1.1 dictates how to use the Guidelines' Drug Quantity Table in U.S.S.G.§ 2D1.1(c) to calculate a base offense level where a defendant is accountable for differing controlled substances. See U.S.S.G. § 2D1.1 application note 10(B)(directing that each drug be converted to its marijuana equivalent, the quantities of each marijuana equivalent be added, and the total used in the Drug Quantity Table to obtain the

for the equivalent of 500.483 kilograms of marijuana, which corresponds to a base offense level of 28. See 2009 U.S.S.G § 2D1.1(c)(6).[17] Because one of the controlled substances was cocaine base, however, application note 10(D) applied, and Lewis' base offense level was adjusted to 26. See U.S.S.G. § 2D1.1 application note 10(D).[18] See also PSR ¶ 25, at 9; Plea Agreement ¶ 10, at 6 (stating that "the parties agree that Defendant's base offense level under the sentencing guideline [sic] is 26 pursuant to [2009] U.S.S.G. § 2D1.1 and Application Note 10(D)"); USPO Memo. at 1. Lewis was found in possession of a dangerous weapon, and, accordingly, U.S.S.G. § 2D1.1(b)(1) directed that his base offense level increase by 2 levels, resulting in a base offense level of 28. See U.S.S.G. § 2D1.1(b)(1). See also PSR ¶ 26, at 10; USPO Memo. at 1 ("A two-level increase was applied pursuant to [2009] USSG § 2D1.1(b)(1), resulting in an offense of 28 . . . ."). The parties also agreed that Lewis was a career offender:

> The parties agree Defendant has two prior felony convictions to qualify as a career offender pursuant to [2009] U.S.S.G. § 4B1.1(b). Specifically, Defendant's prior felony convictions include the following: Aggravated Assault With a Deadly Weapon, a 4th Degree Felony, in the Second Judicial District Court, Case No. D-202-CR-9902789; False Imprisonment, a 4th Degree Felony, and Robbery, a 3rd Degree Felony, in the Second Judicial District Court, Case No. D-

---

combined offense level).

[17]U.S.S.G. § 2D1.1(c)(6) indicates that at least 400 kilograms but less than 700 kilograms of marijuana corresponds to a base offense level of 28. See 2009 U.S.S.G § 2D1.1(c)(6).

[18]U.S.S.G. § 2D1.1 application note 10(D) directs that, if a defendant's offense involves cocaine base, and one or more other controlled substances, application note 10(B) determines the combined offense level, and that level is then reduced by 2 levels. See U.S.S.G. § 2D1.1 application note 10(D).

202-CR-9902789.

Plea Agreement ¶ 12, at 6.  See PSR ¶ 32, at 11.  Because Lewis was designated a career offender at the time of sentencing, and because Lewis' offense was not a violation of 18 U.S.C. §§ 924(c) or 929(a), U.S.S.G. § 4B1.1(b) applied.  See U.S.S.G. §§ 4B1.1(b)-(c).  See also PSR ¶ 32, at 11. 2009 U.S.S.G § 4B1.1(b) provides:

> Except as provided in subsection (c), if the offense level for a career offender from the table in this subsection is greater than the offense level otherwise applicable, the offense level from the table in this subsection shall apply.  A career offender's criminal history category in every case under this subsection shall be Category VI.

| Offense Statutory Maximum | Offense Level* |
|---|---|
| (A)  Life | **37** |
| (B)  25 years or more | **34** |
| (C)  20 years or more, but less than 25 years | **32** |
| (D)  15 years or more, but less than 20 years | **29** |
| (E)  10 years or more, but less than 15 years | **24** |
| (F)  5 years or more, but less than 10 years | **17** |
| (G)  More than 1 year, but less than 5 years | **12.** |

*If an adjustment from § 3E1.1 (Acceptance of Responsibility) applies, decrease the offense level by the number of levels corresponding to that adjustment.

U.S.S.G. § 4B1.1(b).  Section 4B1.1(b) directs the court to look to the statutory maximum for the

convicted offense. See U.S.S.G. § 4B1.1(b). Lewis' penalties were assessed according to 21 U.S.C. § 841(b)(1)(B)(iii), for which a defendant "shall be sentenced to a term of imprisonment which may not be less than 5 years and not more than 40 years." 21 U.S.C. § 841(b)(1)(B). Because of the 21 U.S.C. § 851 enhancement, Lewis' statutory maximum penalty increased to life imprisonment. See PSR ¶ 32, at 11 ("In this case, based on his prior felony drug offense and pursuant to 21 U.S.C. § 841(b)(1)(B)(iii), the offense statutory maximum is life imprisonment, which results in an offense level of 37."). The parties stipulated in the plea agreement, however, that Lewis' offense level was 34, "pursuant to U.S.S.G. § 4B1.1(b)". PSR ¶ 32, at 11.[19] The parties agreed that Lewis demonstrated an acceptance of personal responsibility warranting a 3-level offense reduction. See U.S.S.G. §§ 3E1.1 and 4B1.1(b). See also PSR ¶ 33, at 11; Plea Agreement ¶ 13, at 6; USPO Memo. at 1 (stating that a U.S.S.G. § 3E1.1 reduction reduced the original calculation to 31).

The USPO performs Lewis' revised calculations, pursuant to the First Step Act, "utilizing the 2018 guideline manual." USPO Memo. at 1. Considering Peugh v. United States, 569 U.S. 530 (2013), the Court disagrees, and concludes that the 2009 Guidelines manual dictates Lewis'

---

[19]In the USPO Memo., the USPO states that Lewis' "Career Offender application increased his offense level to 37." The Court notes that the USPO Memo. refers to a "21 U.S.C. § 851 penalty enhancement," which the USPO contends elevated Lewis' statutory penalties to "not less than 10 years and not more than life." USPO Memo. at 1. Although Lewis was charged with violating an offense carrying a statutory maximum of 40 years imprisonment, the 21 U.S.C. § 851 enhancement elevated his statutory maximum to life and, therefore, Lewis' career offender designation increased his offense level to 37. See 21 U.S.C. § 841(b)(1)(B). The parties stipulated to an offense level of 34, and Lewis' sentence was, therefore, calculated using an offense level of 34. See Plea Agreement ¶ 12, at 6; USPO Memo. at 1.

advisory Guidelines sentence, even under the First Step Act, because the 2009 Guidelines were in effect at the time of the offense's commission. See Peugh v. United States, 569 U.S. at 549. Pursuant to the First Step Act, the amount of cocaine base attributed to Lewis, see Plea Agreement ¶ 7(b), at 3 (attributing to Lewis 23.2 grams of cocaine base), amends his penalties to reflect those of 21 U.S.C. § 841(b)(1)(C), which carries a maximum term of imprisonment of 20 years, see First Step Act§ 404; Fair Sentencing Act § 2(a)(2)(now requiring at least 28 grams of cocaine base to warrant an imprisonment term between five and forty years). See also 21 U.S.C. § 841(b)(1)(C)(providing a statutory penalty maximum of 20 years for less than 28 grams of cocaine base); USPO Memo. at 1. The USPO contends that "the 21 U.S.C. § 851 penalty enhancement[20] remains applicable," so Lewis' "statutory penalties become not more than 30 years." USPO Memo. at 1. 21 U.S.C. § 851 provides, in part:

> No person who stands convicted of an offense under this part shall be sentenced to increased punishment by reason of one or more prior convictions, unless before trial, or before entry of a plea of guilty, the United States attorney files an information with the court (and serves a copy of such information on the person or counsel for the person) stating in writing the previous convictions to be relied upon.

---

[20]In drug distribution cases,

> the government has sole power to file an information under 21 U.S.C. § 851 for prior drug convictions . . . . The filing of this information doubles the mandatory minimum or requires mandatory life, and also increases the statutory maximum and thus the offense level under the career offender guideline.

Amy Baron-Evans, Jennifer Coffin & Sara Silva, Deconstructing the Career Offender Guideline, 2 Charlotte L. Rev. 39, 49 (2010). See Sarah French Russell, Rethinking Recidivist Enhancements: The Role of Prior Drug Convictions in Federal Sentencing, 43 U.C. Davis L. Rev. 1135, 1163 (2010)("The 851 enhancement . . . is a statutory provision that doubles the mandatory minimum sentences applicable in drug distribution offenses when the defendant committed a prior 'felony drug offense.'" (quoting 21 U.S.C. § 841(b)).

21 U.S.C. § 851(a)(1). In his Reply, Lewis contends that he "confirmed that prior to the entry of a guilty plea, no § 851 notice had been filed." Reply at 4. Lewis argues, accordingly, that "[a]s a technical matter, § 851 was not complied with because no notice was filed *prior* to the entry of a guilty plea." Reply at 4 (emphasis in Reply). In other words, Lewis contends that the United States did not comply with § 851, because the United States first provided notice of its intent to rely on Lewis' prior convictions to support a sentencing enhancement, at the time of Lewis' guilty plea. See Reply at 4. See also Information at 1 (stating prior conviction relied upon and filing date of November 3, 2009); Plea Agreement at 1 (filed November 3, 2009). Lewis concedes, however, "both that notice was given at the time of the guilty plea and that no contemporaneous objection was lodged." Reply at 4. The PSR states that, according to the Assistant United States Attorney in the case, the United States did not file an information charging 21 U.S.C. § 851, because "the Information to which the defendant pled guilty indicates he committed the instant offense subsequent to a felony drug conviction and is therefore subject to enhanced penalties." PSR ¶ 4, at 3.

The Tenth Circuit has construed 21 U.S.C. § 851 to require the United States to file an information in "situations in which the defendant's statutory maximum or minimum is enhanced and not situations where the defendant's increased sentence under the Guidelines is within the statutory range." United States v. Allen, 24 F.3d 1180, 1184 (10th Cir. 1994)(internal quotation marks omitted)(quoting United States v. Novey, 922 F.2d 624, 627 (10th Cir. 1991), cert. denied, 501 U.S. 1234 (1991), overruled on other grounds by United States v. Flowers, 464 F.3d 1127 (10th Cir. 2006)(holding that 21 U.S.C. § 851's time limitations requiring the United States to file

and serve the defendant with an information containing prior convictions upon which the United States intends to rely to enhance the defendant's drug sentence are not jurisdictional)). In United States v. Novey, the Tenth Circuit explained:

> Section 851 was enacted as part of comprehensive drug legislation in the Controlled Substances Act of 1970, Pub. L. No. 91-513, 84 Stat. 1242 (codified as amended at 21 U.S.C. §§ 801-971 (1988)). The substantive penalty provisions of [21 U.S.C. § 841] were enacted at the same time. *Id.* These penalty provisions, as amended, specifically provide for increasing the maximum and minimum statutory penalties on the basis of a defendant's prior convictions. *See* 21 U.S.C. § 841(b)(1)(A) (raises statutory maximum on the basis of prior conviction from ten to twenty years); § 841(b)(1)(B)(raises statutory minimum from five to ten years and statutory maximum from fort years to life); § 841(b)(1)(C) (raises statutory maximum from twenty to thirty years). Thus, section 841 establishes additional penalties for recidivists, and section 851 provides a measure of protection from their harsh effect.
>
> To satisfy the statutory requirements for increased punishment, the government must file an information stating at least one previous conviction. Under section 841(b)(1)(C), the court can rely upon a single prior conviction to increase a defendant's punishment above the twenty year ceiling up to the thirty year maximum for recidivists.

United States v. Novey, 922 F.2d at 628. The Tenth Circuit in United States v. Novey concluded that "section 851 is satisfied when the government provides notice of one prior conviction and the defendant's Guideline sentence is within the statutory maximum authorized on the basis of that prior conviction." United States v. Novey, 922 F.2d at 627.

Here, the USPO provides that Lewis' "original penalties were assessed as an § 841(b)(1)(B), which is not less than 5 years and no more than 40 years imprisonment; however, as notice of the enhanced penalties of 21 U.S.C. § 851 was provided, his statutory penalties became not less than 10 years and not more than life." USPO Memo. at 1. 21 U.S.C. § 851 enhanced Lewis' statutory minimum and, accordingly, enhanced his offense level pursuant to the career

offender guideline in U.S.S.G. § 4B1.1(b), from 34 to 37. <u>See</u> USPO Memo. at 1; U.S.S.G. § 4B1.1(b).

The Court notes that, at the time of Lewis' original sentencing for his federal offense, the United States averred that Lewis' "sentence guideline pursuant to U.S.S.G. Section 4B1.1b" was "34." Plea Tr. at 4:8-9 (Wang). In the Plea Agreement, the parties stipulated that Lewis' base offense level was 34 under the Guidelines, pursuant to the career offender provision and before a reduction for acceptance of responsibility. <u>See</u> Plea Agreement ¶ 12, at 6. The Court concludes that the parties' stipulation did not affect Lewis' base offense level pursuant to the advisory Guidelines at the time of Lewis' original sentencing. <u>See</u> <u>supra</u> n.2. Lewis pled guilty to the Information, which charged violations of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(iii). <u>See</u> Plea Agreement ¶ 3, at 2. Before the First Step Act's passage, § 841(b)(1)(B)(iii) carried a statutory term of imprisonment for more than 5 grams of cocaine base of "not less than 5 years and not more than 40 years," but, with a 21 U.S.C § 851 enhancement for a prior conviction for a serious drug felony or serious violent felony, the statutory term of imprisonment increased to "not . . . less than 10 years and not more than life imprisonment." 21 U.S.C. § 841(b)(1)(B). Pursuant to <u>United States v. Allen</u>, to use a prior conviction to enhance Lewis' statutory minimum and maximum, the United States was required to file an information prior to Lewis' entry of his guilty plea. <u>See</u> <u>United States v. Allen</u>, 24 F.3d at 1184 (internal quotation marks omitted)(quoting <u>United States v. Novey</u>, 922 F.2d at 627). Although the United States filed its Information on the same day that Lewis entered his guilty plea, the Information was docketed before Lewis' entry of his guilty plea. <u>See</u> Indictment at 1, Clerk's Minutes, filed November 3, 2009 (Doc. 76)(stating that Lewis entered

his guilty plea as to the Information). The Information states that Lewis had "been previously convicted of a felony drug offense of Possession of a Controlled Substance . . . ." Information at 1. Lewis agreed that, "at the time of this incident, [he] also had a prior felony drug conviction of Possession of a Controlled Substance . . . ." Plea Agreement ¶ 7(f), at 5. See Plea Agreement ¶ 8, at 5 (in which Lewis states that "at the time I had a prior felony drug conviction for Possession of a Controlled Substance . . . ."). Lewis agreed that "the Court may rely on any of these facts, as well as facts in the presentence report, to determine the Defendant's sentence, including, but not limited to, the advisory guideline offense level." Plea Agreement ¶ 9, at 5. Lewis had notice in writing of the prior convictions "to be relied upon" and did not challenge those convictions or the court's ability to rely on them. 21 U.S.C. § 851(a)(1). See United States v. Fulton, 433 F. App'x 692, 692 (10th Cir. 2011)(unpublished)(stating that 21 U.S.C. § 851 requires that the United States provide, in writing, the prior convictions to be relied upon, and that the defendant has notice of those prior convictions and an opportunity to challenge them). In the Plea Agreement, Lewis states that he understands that the maximum penalty to which he is subject is "[i]mprisonment for not less than ten (10) years nor more than life imprisonment." Plea Agreement ¶ 4(a), at 2. Although the Plea Agreement does not mention 21 U.S.C. § 851 by name, the Plea Agreement's stipulations indicate that both parties agreed to the application of the 21 U.S.C. § 851 enhancement, by agreeing that Lewis' maximum possible statutory penalty is life imprisonment, and that his minimum statutory penalty is 10 years. See Plea Agreement ¶ 4(a), at 2. See also 21 U.S.C. §§ 841(b)(1)(B) and 851. The PSR, furthermore, contains reference to 21 U.S.C. § 851, and explains that the United States intended to rely on the prior felony drug conviction mentioned

in the Information, providing Lewis with notice that he was subject to enhanced penalties.  See PSR ¶ 4, at 3.

The USPO contends in the USPO Memo. that the base offense level used at Lewis' original sentencing was 34, because the parties stipulated to it:

> In the defendant's calculations provided in the 2010 Presentence Report, the 2009 guideline manual was utilized . . . and the Career Offender application increased his offense level to 37.  However, according to the plea agreement, the parties stipulated to an offense level 34; therefore, the defendant's offense level was adjusted to 34.

USPO Memo. at 1.  The parties thus calculated his base offense level after acceptance of responsibility as 31.  See Plea Tr. at 4:8-11 (Wang); Sentencing Tr. at 19:13 (Court)(Judge Hansen stating that the Guidelines offense level is 31).  The parties may not, through stipulation, change the advisory Guidelines level -- the Guidelines manual in effect at the time determines that level, although the Guidelines are advisory.  See, e.g., United States v. Urcino-Sotello, 269 F.3d 1195, 1197 (10th Cir. 2001)(stating that the Guidelines are advisory only and do not limit a district court's sentencing discretion).  Although a district court commits error when it treats the Guidelines as mandatory, see United States v. Labastida-Segura, 396 F.3d 1140, 1143 (10th Cir. 2005), district courts must nonetheless calculate a sentence under the Guidelines, and it is error to calculate the sentence incorrectly, see United States v. Kieffer, 681 F.3d 1143, 1164-65 (10th Cir. 2012).  Only a properly calculated Guidelines sentence is presumed reasonable.  See United States v. Reyes-Alfonso, 653 F.3d 1137, 1145 (10th Cir. 2011).  The Tenth Circuit reviews imprisonment sentences "for reasonableness under an abuse of discretion standard."  United States v. Kieffer, 681 F.3d at 1164 (citing Gall v. United States, 552 U.S. 38, 51 (2007)).  The Tenth Circuit in

United States v. Kieffer stated:

> Within that milieu, "we review factual findings for clear error and legal determinations de novo." *United States v. Kristi*, 437 F.3d 1050, 1054 (10th Cir. 2006). "The correct Guidelines calculation is . . . the 'natural starting point' from which the sentencing court exercises its discretion under § 3553(a)." *United States v. Langford*, 516 F.3d 205, 212 (3d Cir. 2008). We "must first ensure that the district court committed no *significant* procedural error" in calculating the advisory guideline range. *Gall*, 552 U.S. at 51, 128 S. Ct. 586 (emphasis added). That is, we must determine whether the method by which the court calculated that range is "'procedurally sound.'" *Id.* "[I]mproperly calculating the Guidelines range, . . . failing to consider the § 3553(a) factors, [or] selecting a sentence based on clearly erroneous facts" are just three examples of likely "significant procedural error." *Id.* (internal parentheses omitted). We will consider the substantive reasonableness of a defendant's sentence only absent "reversible procedural error." *United States v. Lente*, 647 F.3d 1021, 1030 (10th Cir. 2011). We deem procedural error not reversible, *i.e.*, harmless, if the record viewed as a whole clearly indicates the district court would have imposed the same sentence had it not relied on the procedural miscue(s). *See Williams v. United States*, 503 U.S. 193, 203 . . . (1992). In other words, remand is necessary "if the sentence was 'imposed *as a result of* an incorrect application' of the Guidelines." *Id.* at 202-03 . . . (quoting 18 U.S.C. § 3742(f)(1)).

United States v. Kieffer, 681 F.3d at 1164-65 (emphasis and alterations in original).

Application note 2 to U.S.S.G. § 4B1.1(b) provides:

> "Offense statutory maximum," for the purposes of this guideline, refers to the maximum term of imprisonment authorized for the offense of conviction that is a crime of violence or controlled substance offense, including any increase in that maximum term under a sentencing enhancement provision that applies because of the defendant's prior criminal record (such sentencing enhancement provisions are contained, for example, in 21 U.S.C. § 841(b)(1)(A), (B), (C), and (D)). For example, in a case in which the statutory maximum term of imprisonment under 21 U.S.C. § 841(b)(1)(C) is increased from twenty years to thirty years because the defendant has one or more qualifying drug convictions, the "Offense Statutory Maximum" for that defendant for the purposes of the guideline is thirty years and not twenty years. If more than one count of conviction is a crime of violence or controlled substance offense, use the maximum authorized term of imprisonment for the count that has the greatest offense statutory maximum.

U.S.S.G. § 4B1.1(b) application note 2. Because the statutory maximum for Lewis' offense was

life, pursuant to U.S.S.G. § 4B1.1(b) and application note 2, Lewis' base offense level according to the advisory Guidelines was 37. See U.S.S.G. § 4B1.1(b) (stating that, if an offense's statutory maximum is life, the corresponding base offense level is 37). The parties agreed that Lewis accepted responsibility for his conduct, entitling him to a 3-level reduction from the base offense level. See Plea Agreement ¶ 13, at 6. Lewis' resulting advisory Guidelines base offense level was 34 -- reduced 3 levels from 37.

Using the parties' impermissibly-stipulated offense level -- after acceptance of responsibility -- of 31, Judge Hansen calculated a Guidelines range of 188 to 235 months. See U.S.S.G. Sentencing Table. See also Sentencing Tr. at 19:13-14 (Court)(stating that the guideline imprisonment range for an offense level of 31 and criminal history category of VI is 188 to 235 months). Using the advisory Guidelines-calculated offense level after acceptance of responsibility of 34, the working Guidelines range at the time of Lewis' sentencing was, properly calculated, 262 to 327 months. See U.S.S.G. Sentencing Table. Because Judge Hansen used the parties' stipulated range, instead of the correct advisory Guidelines range, he sentenced Lewis to a term of imprisonment about 74 months less than the low end of the actual advisory Guidelines range at the time. See Sentencing Tr. at 19:20-21 (Court)(committing Lewis to the BOP's custody for a term of 188 months). Although the Guidelines are advisory, a district court must consult them during sentencing, along with "other factors specified in 18 U.S.C. § 3553(a), including 'the need to avoid unwarranted sentencing disparities.'" Hughes v. United States, 138 S. Ct. 1765, 1768-69 (2018)(quoting 18 U.S.C. § 3553(a)(6). Even when a defendant enters into a binding, 11(c)(1)(C) agreement -- which is not the case here -- the district court must still consider the Guidelines, and

"may not accept the agreement unless the sentence is within the applicable Guidelines range, or it is outside that range for justifiable reasons specifically set out." Hughes v. United States, 138 S. Ct. at 1769. Judge Hansen did not provide any justification on the record or in writing for assigning Lewis a below-Guidelines sentence, other than that the parties stipulated to an offense level, which he adopted.[21]

---

[21]When the Court first came on the bench, in 2003, it was common practice for the local bar -- Assistant United States Attorneys, Assistant Federal Public Defenders, CJA lawyers, and retained defense lawyers -- to engage in fact bargaining. Rule 11(c)(1)(C) agreement were relatively rare, but the parties would agree to all sorts of things in the rule 11(c)(1)(B) agreements -- minor and minimal role adjustments, the presence and absence of enhancements and reductions, base offense levels, adjusted base offense levels, the weight of drugs, and the presence of firearms. The parties often admitted that they had agreed on these Guidelines facts -- not because they were true or accurate -- but because they thought the bargaining resulted in a fairer Guidelines range and sentence. This fact bargaining was one way the bar dealt with the often-harsh consequences of mandatory Guidelines, but the practice was so deep-rooted that it continued after the Supreme Court decided United States v. Booker in 2005. The United States Attorney General John Ashcroft tried to stamp out the practice, in his Memo Regarding Policy on Charging of Criminal Defendants (dated September 22, 2003), https://www.justice.gov/archive/opa/pr/2003/September/03_ag_516.htm (last visited April 9, 2019), which instructed his Assistant United States Attorneys to stop the practice, but the instruction from the top did little to stop the practice. Part of the resistance to change came from the fact that judges did not like and discouraged rule 11(c)(1)(C) agreements, and such agreements were sometimes difficult to secure in the DOJ's appeal system. And what made the fact bargaining practice even worse was that, at the time, the USPO sometimes would say in the Presentence Investigation Report what it thought was the correct Guideline and sometimes would not, but it would always use the parties' agreement to calculate the Guidelines. The result was that there was an incorrect Guidelines calculation in the PSR, and the UPSO knew it. Sometimes the Court would catch the intentional miscalculation, and sometimes it would not. Sometimes the parties would admit they had fact bargained to lower the Guidelines sentencing range, and then other times they argued for their position. The Court was often caught in the unenviable position of having to fight everyone -- the Assistant United States Attorney, the defense lawyer, and the USPO -- if it thought the Guidelines calculation was not right; the Court was caught in the uncomfortable position of being the bad guy upsetting their scripted drama. And the Court had to decide sometimes complex, difficult Guidelines issues without the benefit of any adversarial process.

When the Court came on the bench, it attempted to put an end to this somewhat dishonest

Reconsidering Lewis' term of imprisonment, pursuant to the First Step Act, the Court concludes that Lewis' advisory Guidelines range is now 188 to 235 months -- the range the original sentencing court used. Pursuant to the First Step Act, the amount of cocaine base attributed to

---

practice of which the DOJ officially disapproved, and which was not consistent with what Congress and the United States Sentencing Commission intended. In a roundtable meeting of the major players -- the United States Attorney, United States Public Defender, Chief United States Probation Officer, and the District Judges for the District of New Mexico -- the Court instructed the USPO to cease accepting the parties' Guidelines agreements if they disagreed with them. The Court told the bar that, if they disagreed with the USPO's calculations, the parties had to work informally with the USPO to work out any differences, and supply all documents, information, and arguments to the USPO during that informal process; the Court made it clear that it did not want the parties showing up to the sentencing hearing with witnesses, evidence, or arguments without making that material available to the USPO before it showed up at court. The bar was also instructed that, if it disagreed with the USPO's Presentence Investigation Report, they had to file formal objections and brief thoroughly their positions. This process would give the Court maximum adversarial process to decide the, hopefully, few remaining objections about the Presentence Investigation Report or the Guidelines calculations. This process is one that the Court, the USPO, and the bar now use. It has helped the Court determine the correct Guidelines sentence in a much more robust and intellectually honest manner. The Court is now often prepared in advance of the sentencing so that the sentencing can go smoothly and without a recess. This need to get the sentencing done at one time is particularly important in New Mexico, where defendants often with poor transportation, have to drive great distances with their families to come to the sentencing in Albuquerque. Often, the only issue left at the sentencing hearing is whether to vary and the amount of any variance. Finally, at the Las Cruces roundtable discussion, the Court told the bar not to be afraid to use a rule 11(c)(1)(C) agreement. If the lawyers want a particular sentence, it is better to agree to that sentence rather than play fast and loose with the Guidelines calculations. The Court indicated that it would not see an increase in rule 11(c)(1)(C) agreements as an unwarranted incursion on its discretion; the Court is grown up, and if it cannot swallow the rule 11(c)(1)(C) agreement, it will reject it. Otherwise it would all join hands and jump off the cliff together, and accept the rule 11(c)(1)(C) agreements, which often is better than no conviction at all when the United States' case has problems.

The Plea Agreement here and the PSR here appear to pre-date the Las Cruces summit. The parties fact bargained to get out of the 262 to 327-month Guidelines range, the USPO plugged the agreement in its calculations, and Judge Hansen, not seeing any objection to the PSR and the Guidelines calculation, accepted the Guidelines calculation in the PSR without question. Lewis benefitted from a process that no longer exists in the Court.

Lewis, see Plea Agreement ¶ 7(b), at 3 (attributing to Lewis 23.2 grams of cocaine base), amends his penalties to reflect those of 21 U.S.C. § 841(b)(1)(C), which carries a maximum term of imprisonment of 20 years, see First Step Act § 404; Fair Sentencing Act § 2(a)(2) (now requiring at least 28 grams of cocaine base to warrant an imprisonment term between five and forty years), see also 21 U.S.C. § 841(b)(1)(C)(providing a statutory penalty maximum of 20 years for less than 28 grams of cocaine base); USPO Memo. at 1. The USPO contends that "the 21 U.S.C. § 851 penalty enhancement remains applicable," so Lewis' "statutory penalties become not more than 30 years." USPO Memo. at 1. See 21 U.S.C. § 841(b)(1)(C); 21 U.S.C. § 851. Using an offense statutory maximum of 30 years, Lewis' career offender guideline offense level is 34. See U.S.S.G. § 4B1.1(b). Lewis is entitled to a 3-level reduction for acceptance of responsibility, resulting in an offense level of 31. See U.S.S.G. §§ 3E1.1 and 4B1.1(b). See also Plea Agreement ¶ 13, at 6. A base offense level of 31 and a criminal history category of VI result in an advisory Guidelines range of 188 to 235 months. See U.S.S.G. Sentencing Table. Lewis' current sentence of 188 months imprisonment, therefore, is within the advisory Guidelines range applicable to Lewis after the First Step Act.

The Court next considers the 18 U.S.C. § 3553(a) factors in determining whether -- and if so, by how much -- to reduce Lewis' sentence below 188 months -- at the low end of the current advisory Guidelines range. See Dillon v. United States, 560 U.S. at 827. Because Judge Hansen imposed a term of imprisonment below Lewis' advisory Guidelines range, § 1B1.10 authorizes the Court to impose a term comparably below the amended range. See Dillon v. United States, 560 U.S. at 827. Lewis' original working Guidelines range was 262 to 327 months. See Lewis Memo.

at 10; U.S.S.G. Sentencing Table.  Judge Hansen sentenced Lewis to a term of imprisonment of

188 months -- 74 months below the working Guidelines range.  See Sentencing Tr. at 19:20-20:3

(Court).  Accordingly, the Court may, but need not, reduce Lewis' sentence a comparable amount -

- 74 months below the current Guidelines minimum of 188 months -- for a term of imprisonment

of as low as 114 months.  See Dillon v. United States, 560 U.S. at 827; U.S.S.G § 1B1.10.  Section

3553(a) of the Federal Sentencing Act lists "[f]actors to be considered in imposing a sentence."

18 U.S.C. § 3553(a).  A sentencing judge, in considering the § 3553(a) factors, must "impose a

sentence sufficient, but not greater than necessary, to comply with the purposes set forth in

paragraph (2) of this subsection."  18 U.S.C. § 3553(a).[22]

---

[22]Section 3553(a) counsels the sentencing judge to consider:

**(1)** the nature and circumstances of the offense and the history and characteristics
of the defendant;

**(2)** the need for the sentence imposed --

**(A)** to reflect the seriousness of the offense, to promote respect for the law, and
to provide just punishment for the offense;

**(B)** to afford adequate deterrence to criminal conduct;

**(C)** to protect the public from further crimes of the defendant; and

**(D)** to provide the defendant with needed educational or vocational training,
medical care, or other correctional treatment in the most effective manner;

**(3)** the kinds of sentences available;

**(4)** the kinds of sentence and the sentencing range established for --

The Court has carefully considered the Guidelines, but, in arriving at its sentence, has taken

---

    **(A)** the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines --

        **(i)**    issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

        **(ii)**    that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; or

    **(B)** in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);

**(5)** any pertinent policy statement --

    **(A)** issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

    **(B)** that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.[1]

**(6)** the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

**(7)** the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

account of not only the Guidelines, but its other sentencing goals. Specifically, the Court has considered the Guidelines' sentencing range established for the applicable category of offense committed by the applicable category of defendant. The Court has identified several factors that put downward pressure, and several that put upward pressure on the sentence. Some of these factors overlap, and some go on both sides of the ledger.

The Court has identified roughly thirteen factors that put downward pressure on Lewis' sentence. First, Lewis' history and characteristics put downward pressure on the sentence -- the Court reviewed Lewis' family and friends' letters in support, see Reply at 7-13, and Lewis has nine children, some who have stayed with him for extended periods of time. The letters in support indicate that Lewis has remained in contact with his children while in custody. The Court should strive to not lock him up more than necessary, because his children need him, and studies within the state prison system in the southern part of the state show that fathers who stay in contact with their children while they are in custody have a lower recidivism rate. See, e.g., R. Romo, "Prison Program Will Expand, Father Helped in Southern Facility," Albuquerque Journal, July 7, 2004, at B3 ("When fathers who are incarcerated are connected to their children and their families, the inmates' chances of coming back [to prison] decrease."). Second, one of the factors that almost always puts downward pressure -- although it may also in many cases, including this one, put upward pressure on the sentence -- is the need for the sentence to provide just punishment. Third, one of the factors that almost always puts downward pressure -- although it too may in many cases, including this one, also put upward pressure on the sentence -- is the need for the punishment to promote respect for the law; i.e., a sentence that the community and the bar do not regard as

showing that the Court missed the mark. Fourth, Lewis has many problems, but the Court uses, and substitutes for incarceration, supervised release to address many of the issues that got Lewis to this problem, especially his drug problem. Fifth, while the task of the Court, as a district court judge, is not just to come up with a reasonable sentence, but to calculate a sentence that fairly, effectively, and fully promotes the § 3553(a) factors, see United States v. Roybal, 188 F. Supp. 3d at 1220; United States v. Conlan, 500 F.3d 1167, 1169 (10th Cir. 2007)("[A] district court's job is not to impose a reasonable sentence. Rather, a district court's mandate is to impose a sentence sufficient, but not greater than necessary, to comply with the purposes of section § 3553(a)(2)." (citation omitted)) -- the Court is always mindful that the defendant, the Tenth Circuit, and the public will ultimately review the sentence for reasonableness; that perception often -- as in this case -- puts downward pressure on the sentence. Sixth, what reasonableness for a district judge means is that the sentence is not greater than necessary to promote § 3553(a)'s goals. Seventh, Lewis has accepted responsibility for what he did by pleading guilty. Eighth, Lewis' former attorney Mr. D. Penni Adrian attested that Lewis attempted to and did cooperate with law enforcement, although the United States declined, thereafter, to make a sentencing recommendation on his behalf. See Affidavit of D. Penni Adrian ¶¶ 4-15, at 1-3 (dated April 2, 2010), filed April 5, 2010 (Doc 90-1). Ninth, Lewis' post-arrest rehabilitation efforts put downward pressure on the sentence, and Lewis has completed several courses and certifications while incarcerated, including completing his GED, an Inmate Financial Responsibility Program, parenting classes, food service and cooking classes, vocational courses, and drug education courses. See Motion at 8-11. Tenth, the need for the sentence to be not greater than necessary

always puts downward pressure on the sentence.  Eleventh, Lewis' physical conditions, including

alcohol and drug abuse, put downward pressure on the sentence; the Court can and should use

conditions of supervised release -- rather than incarceration -- to address these problems.  Twelfth,

the federal offense for which Lewis is being resentenced involved no act of violence.  Thirteenth,

while incarcerated, Lewis has had no significant disciplinary actions, and none at all since 2015.

See Motion at 9 (indicating that the Reentry Plan Progress Report from the BOP notes that Lewis'

prior disciplinary actions were for possession of a charger, possession of tobacco, and possession

of a modified speaker).

There are, however, about fourteen factors that put upward pressure on the sentence and

suggest that the Court should sentence Lewis within the Guidelines range.  First, Lewis has a long

criminal history involving acts of violence and drug-related offenses.  Second, at the time of his

arrest, Lewis possessed multiple drug bundles, including 23.2 gross grams of cocaine base in his

pants pocket, and, on the couch underneath Lewis' sleeping body, 3.5 gross grams of cocaine, 3.1

gross grams of marijuana, and another 10.3 gross grams of cocaine base.  See PSR ¶ 11, at 6-7.[23]

Third, although the federal offense involves no act of violence, Lewis had a fully loaded firearm

within reach.  Fourth, Lewis has not performed well on supervised release, as evidenced by his

history of probation violations and revocations.  Fifth, this sentence must promote respect for the

law.  Sixth, this sentence must provide just deterrence.  Seventh, the Court has to afford adequate

---

[23]In the old days, the USPO did not file the Presentence Investigation Report with the Court on CM/ECF, but the Court reviewed it in determining Lewis' possible sentence reduction.  The USPO now files Presentence Investigation Reports on CM/ECF.  The Court has now filed the PSR as Doc. 169 on the docket.

deterrence, at a specific level as to Lewis. Eighth, the Court has to afford adequate deterrence at a general level. Ninth, the Court must protect the public from Lewis' criminal behavior. Tenth, the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct puts upward pressure to keep Lewis' sentence a Guidelines sentence. Eleventh, again, the need to produce a reasonable sentence counsels for a Guidelines sentence -- or at least exerts upward pressure on the sentence -- where there are no facts that suggest a downward departure is appropriate. Twelfth, what reasonableness means for a district judge is that the sentence is sufficient to promote the § 3553(a) goals. Thirteenth, the USPO worked with Lewis a lot on pretrial supervision and on probation for past offenses, and was very sympathetic to his situation, affording him lots of opportunities, and he still did not perform well. Fourteenth, federal government resources available in the BOP have assisted and can continue to assist Lewis with combatting his drug problem, including the BOP's 500-hour drug treatment program.

Lewis' criminal history is disturbing. It is filled with violence and bad behavior. He has not been a good citizen of the Albuquerque community. Judge Hansen and the USPO no doubt looked at the same PSR that the Court has reviewed and did not see a basis for a variance. The Court also is not enthusiastic and eager to release him to the community, much less early. While the Court does not know how well Lewis is doing with his extreme substance abuse problems, his past does not suggest strongly that he will do well when released and will stay out of trouble. The Court fears that, given his limited education and skills, and his extreme criminal and drug history, he will get in with the wrong crowd quickly. He has no assets and will have to look for a place to

reside.  These factors put considerable upward pressure on Lewis' sentence.

Another factor that puts upward pressure on the sentence is that Lewis was the beneficiary of a Guidelines sentence calculation to which he was not entitled.  He benefitted from a lower-than-proper Guidelines calculation.  Now, there is no way to know whether, if the Guidelines range had been properly calculated -- if Judge Hansen had not adopted the parties' fact-bargaining stipulation --Judge Hansen would have varied or what the Assistant United States Attorney would have argued.  But, regardless, Lewis benefitted, because sentencing began with a low Guidelines range.

On the other hand, the political branches have spoken.  The political branches, by and large, think the sentences of the past were too harsh.  It seems not to be deferential to the Congress and the President not to give Lewis some benefit of the First Step Act.[24]  This puts downward pressure

---

[24]The Court is not fond of the Sentencing Commission's and Congress' decision to make the Fair Sentencing Act's §§ 2 and 3, and other changes to the Guidelines, retroactive.  The Court does not like revisiting sentences it worked hard to craft earlier.  Although the circumstances in Lewis' case are unique, because Judge Hansen used the parties' stipulated Guidelines range instead of the advisory Guidelines range, in general, it does not make sense to arrive at a sentence that accurately reflects the 3553(a) factors only to discard it several years later.  It also often makes the Court not completely honest then at the original sentencing or now at the new sentencing.  The Court works very hard to get its sentences right and to reflect accurately the § 3553(a) factors.  It does not seem to make sense to have a second sentencing unless there was some procedural or substantive error.  In a big district like New Mexico -- which received 3,378 new criminal case filings in 2017, the most recent year for which the DOJ has published these statistics, see Dep't of Justice, United States Attorneys' Annual Statistical Report: Fiscal Year 2017 at 3 tbl.1, available at https://www.justice.gov/usao/resources/annual-statistical-reports (last visited April 30, 2019), and currently has five active District Judges and two Senior District Judges -- resentencing can impose a real burden.  The retroactivity rule also treats criminal defendants as a class rather than considering the factors in each case, turning United States v. Booker on its head just for the defendants' benefit.

The Marshall Project, a nonprofit news organization covering the United State criminal

on Lewis' sentence. The Court will sentence at the low end of the advisory Guidelines range or 188 months. This reduction will not result in a time-served sentence or in immediate release. Lewis has served 135 months and has approximately 33 months to go, before accounting for the BOP's good time calculation.[25] The Court will not reduce Lewis' 8-year term of supervised release, pursuant to Lewis' amended penalties under 21 U.S.C. § 841(b)(1)(C), which require a term of at least 6 years when a sentencing court imposes a term of conviction and the defendant

_____

justice system, estimates that the First Step Act's § 404, which makes the Fair Sentencing Act's §§ 2 and 3 retroactive, will affect approximately 2,600 federal prisoners convicted of crack offenses before 2010. See Justin George, What's Really in the First Step Act?, The Marshall Project, available at https://www.themarshallproject.org/2018/11/16/what-s-really-in-the-first-step-act (last visited April 16, 2019). It is unlikely that retroactive application of the Fair Sentencing Act's amended Guidelines for crack cocaine offenses will produce noteworthy cost savings for the BOP or that it will achieve the purportedly intended decrease in the nation's prison population. Furthermore, the First Step Act seems to encourage reducing sentences regardless of the characteristics specific to each eligible defendant. Regarding other retroactive Guidelines amendments, the Department of Justice has urged that retroactive application of the Guidelines should be "rare" and "limited to lower-level non-violent drug offenders without significant criminal histories." Sally Quillian Yates, U.S. Att'y, N. Dist. Ga., Statement Before U.S. Sentencing Commission in the Public Hearing on Retroactive Application of 2014 Drug Guidelines Amendment 111-115 (June 10, 2014)(transcript available at http://www.ussc.gov/videos/public-hearing-june-10-2014)("Yates Testimony"). The DOJ added that retroactivity should be restricted "to a class of non-violent offenders who have limited criminal history, that did not possess or use a weapon and this will only apply to the category of drug offender who warrants a less severe sentence." Yates Testimony at 117. The First Step Act's § 404 does not include any of these categorical bars.

[25]Lewis avers that the BOP used a good time calculation during Lewis' incarceration "that resulted in an inmate serving 87.14% of his sentence." Motion at 6. The First Step Act's § 102(b) increases the good time credits that inmates can earn -- that is, time credited toward the service of a prisoner's sentence, subject to the BOP's determination that the prisoner, for example, displayed exemplary compliance with institutional disciplinary regulations or educational/rehabilitative programming. See First Step Act § 102. Notwithstanding the Court's imposition of a term of imprisonment followed by a term of supervised release, the BOP's calculation of Lewis' entitlement to good time credits may affect the actual duration of his sentence.

has a prior conviction for a felony drug offense.  See 21 U.S.C. § 841(b)(1)(C).  Considering the 18 U.S.C. § 3553(a) factors, the Court concludes that an 8-year term of supervised release is sufficient, but not greater than necessary, to comply with the punishment purposes set forth in the Sentencing Reform Act.

The Court concludes that the punishment set forth in the Guidelines is appropriate for this sort of offense.  The Court has considered the kinds of sentences and ranges that the Guidelines establish.  The Court concludes that a sentence of 188 months is necessary, but also adequate, to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence -- both at a specific and a general level -- protect the public, avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct, and, because the Court has placed him on supervised release following his term of incarceration, effectively provides Lewis with needed education, training, and care to deal with the problems that have brought him to this point.  In sum, the Court believes that the sentence given fully reflects each of the factors which 18 U.S.C. § 3553(a) embodies.  The Court also believes this sentence is reasonable.  The Court believes that the sentence is sufficient, but not greater than necessary, to comply with the Sentencing Reform Act's purposes of punishment. Normally, in this case, where the upward factors -- both quantitatively and qualitatively -- outweigh the downward factors, the Court would keep the sentence in the Guidelines range and sentence at the bottom of the Guidelines range.  The Court rarely sentences higher in the range unless there is an aggravating factor, and while Lewis' crime is a serious one, there is not something present that is so serious that it deserves or warrants that the Court crawl up in the

Guidelines range. The Court concludes that a term of imprisonment of 188 months, followed by 8 years of supervised release, at the low end of the Court's post-First-Step-Act working Guidelines range, is appropriate.

The Court has, as the record and this opinion demonstrate, carefully considered the Guidelines, but in arriving at its sentence, the Court has considered other sentencing goals. Specifically, the Court has considered the Guidelines' sentencing range established for the applicable category of offense committed by the applicable category of defendant. After carefully considering the case's facts and circumstances, the Court concludes that the punishment set forth in the working Guidelines range is appropriate for Lewis' offense. The Court concludes, in sum, that a 188-month sentence fully and effectively reflects each of the factors embodied in 18 U.S.C. § 3553(a). While the Court's task, as a District Court and a sentencing court, is not to come up with a reasonable sentence, but to arrive at a sentence that accurately reflects the factors in 18 U.S.C. § 3553(a), see United States v. Martinez-Barragan, 545 F.3d 894, 904-05 (10th Cir. 2008), the Court also believes the sentence is reasonable. Finally, but perhaps most importantly, the Court concludes that a 188-month sentence is sufficient, but not greater than necessary, to comply with the purposes set forth in the Sentencing Reform Act.

**IT IS ORDERED** that: (i) Defendant Jabsie Dwayne Lewis' Emergency Motion to Reduce Sentence Pursuant to the First Step Act of 2018 Immediate Release Eligible, filed February 11, 2019 (Doc. 153), is denied; and (ii) the Court does not reduce Lewis' sentence, which remains at 188 months of imprisonment, to be followed by 8 years of supervised release.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

John C. Anderson
   United States Attorney
Paul H. Spiers
Adam S. Rowley
   Assistant United States Attorneys
United States Attorney's Office
Albuquerque, New Mexico

      *Attorneys for the Plaintiff*

Kari Converse
   Assistant Federal Public Defender
Albuquerque, New Mexico

-and-

Monnica Lynn Barreras
Law Office of Monnica L. Barreras, LLC
Albuquerque, New Mexico

      *Attorneys for the Defendant*